MARGARET A. CLIFFORD vs. ATLANTIC COTTON MILLS.

Essex.    November 4, 1887. — January 9, 1888.

Present: MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Personal Injuries — Landlord and Tenant — Roof — Snow.*

The owner of a building with a steep and unguarded roof, who lets it to a tenant,
reserving only the right to enter the "premises to repair the same," is not liable
to a person injured by a fall of snow from the roof while travelling with due
care upon the adjoining highway, it not appearing that the tenant might not by
the use of reasonable care have prevented the accident.

TORT for personal injuries occasioned to the plaintiff by the fall of snow from a building.

At the trial in the Superior Court, before *Hammond*, J., without a jury, there was evidence that the defendant owned a block of dwelling-houses on Canal Street in Lawrence; that the block was three stories high, constructed with a steep slate roof, slanting towards the sidewalk, the ridgepole being parallel therewith, and that the roof had no protection or railing to keep the snow from falling upon the sidewalk; that the plaintiff was going along the sidewalk, in the exercise of due care, when a large quantity of snow slid from the roof of one of the houses upon her, and greatly injured her; and that a tenant occupied the house under a written lease which covered the whole house, and provided, so far as it was material, that the lessee should not "make, nor suffer to be made, any alteration in the same, but with the assent in writing" of the agent of the defendant, and "that the said agent, or any one appointed by him for the purpose, may, at any time, enter into said premises to repair the same, or to ascertain if the same are properly used."

The judge ruled that the plaintiff could not maintain her action, and found for the defendant.    The plaintiff alleged exceptions.

*J. M. Stearns*, for the plaintiff.

*D. Saunders & C. G. Saunders*, for the defendant.

HOLMES, J.    This is an action for personal injuries done to the plaintiff by the fall of snow from the roof of the defendant's house into the highway.    The whole house was let at the time to

a tenant, and the only difference between this case and *Leonard* v. *Storer*, 115 Mass. 86, is, that there the tenant had agreed to make all needful repairs, while in the case at bar there was no contract on either side, but the landlord reserved the right to, enter the premises to repair the same, or to ascertain if the same were properly used, &c.   This difference cannot affect the result, because the damage was not caused in either case by a want of repairs, but by the original character of the structure, and therefore the presence or absence of a covenant to repair has nothing to do with the question, and because the landlord's reservation of a right to enter, in the case before us, did not include the control of the roof, which the landlord was held to have had in *Kirby* v. *Boylston Market Association*, 14 Gray, 249.   *Shipley* v. *Fifty Associates*, 101 Mass. 251, 254; and 106 Mass. 194, 200. See *Larue* v. *Farren Hotel Co.* 116 Mass. 67.   See also *Lowell* v. *Spaulding*, 4 Cush. 277; *Payne* v. *Rogers*, 2 H. Bl. 350.

It may be that the tenant had a right to put a guard upon the roof in *Leonard* v. *Storer*, but if so, his right was independent of his covenant to repair, and the tenant had the same right in the present case.   *Boston* v. *Worthington*, 10 Gray, 496, 500.   See *Swords* v. *Edgar*, 59 N. Y. 28, 36; *Coupland* v. *Hardingham*, 3 Camp. 398.   On the other hand, if the landlord had the right to put up a guard in the present case during the tenancy, it is not clear that he did not have it also in the other.   In either case, of course, a guard might have been put up before the lease was made.   The decision in *Leonard* v. *Storer* was on the ground that "it does not appear that [the tenant] might not have cleared the roof of snow by the exercise of due care, or that he could not by proper precautions have prevented the accident."   The same is true here.

There is no doubt that a man sometimes may be liable in tort, notwithstanding the fact that the damage was attributable in part to the concurrent or subsequently intervening misconduct of a third person.   *Elmer* v. *Locke*, 135 Mass. 575, 576.   *Lane* v. *Atlantic Works*, 111 Mass. 136.   *Walker* v. *Cronin*, 107 Mass. 555.   *Newman* v. *Zachary*, Aleyn, 3.   *Scott* v. *Shepherd*, 2 W. Bl. 892; *S. C.* 3 Wils. 403.   *Dixon* v. *Bell*, 5 M. & S. 198.   *Clark* v. *Chambers*, 3 Q. B. D. 327.   *Winsmore* v. *Greenbank*, Willes, 577 (see 21 Am. Law Rev. 765, 769).   *Lynch* v. *Knight*, 9 H. L. C.

577, 590, 600. *Lumley* v. *Gye*, 2 El. & Bl. 216. See 1 Hale P. C. 428; *Riding* v. *Smith*, 1 Ex. D. 91, 94. But the general tendency has been to look no further back than the last wrongdoer, especially when he has complete and intelligent control of the consequences of the earlier wrongful act. See, for example, 111 Mass. 141. *Hastings* v. *Stetson*, 126 Mass. 329. *Clarke* v. *Morgan*, 38 L. T..(N. S.) 354. *Carter* v. *Towne*, 103 Mass. 507.

In the case of landlords who have given up to the tenant control of the premises in the matter out of which the damage arises, this court has never gone further than to hold them liable when the use from which the damage or nuisance necessarily ensues was plainly contemplated by the lease. See *Jackman* v. *Arlington Mills*, 137 Mass. 277; *Harris* v. *James*, 45 L. J. Q. B. 545.

It is true, that, if the nuisance exists when the premises are let, the landlord can be held, although the tenant may be liable also to the person injured, for the landlord is taken to have contemplated the premises remaining in the condition in which he let them. *Dalay* v. *Savage*, 145 Mass. 38, 41. *Todd* v. *Flight*, 9 C. B. (N. S.) 377. *Swords* v. *Edgar*, 59 N. Y. 28, 34. *Joyce* v. *Martin*, 15 R. I. 558. But courts have differed when the nuisance existing at the time of the lease was due to want of repairs, and the tenant had covenanted to make repairs. *Pretty* v. *Bickmore*, L. R. 8 C. P. 401. *Gwinnell* v. *Eamer*, L. R. 10 C. P. 658. *Swords* v. *Edgar*, *ubi supra*. And the landlord will not be liable for the use of the premises in such a way as to do harm, merely because there was a manifest possibility of their being used in such a way. The liability will stop with the tenant whose intervening wrong is the immediate cause of the damage. *Mellen* v. *Morrill*, 126 Mass. 545. *Rich* v. *Basterfield*, 4 C. B. 783. *Gandy* v. *Jubber*, 5 B. & S. 78, 90; 9 B. & S. 15, 16. *Nelson* v. *Liverpool Brewery Co.* 2 C. P. D. 311. *Edwards* v. *New York & Harlem Railroad*, 98 N. Y. 245. In such cases it cannot matter whether the wrong on the part of the tenant is an act which makes the premises a nuisance, or an omission which allows them to become so. It is as much his duty to act in the latter case as it is to abstain in the former. In either, as against the public, the landlord, unless he has assumed the duty himself by covenant, has a right to rely upon the tenant's managing the premises in his occupation in such a way as to pre-

vent their being a nuisance. *Stewart* v. *Putnam*, 127 Mass. 403, 406. *Lowell* v. *Spaulding*, 4 Cush. 277. *Russell* v. *Shenton*, 3 Q. B. 449. 1 Chitty Pl. (7th ed.) 94.

The defendant's house was not a nuisance in itself. If it was, half the householders in Boston are indictable at the present moment. It was certain to become so at times by the mere working of nature alone, unless the tenant cleared the roof, or took other steps to prevent it. But, so far as appears, the tenant could have done so by using reasonable care. If he could, it was his duty to do so, and the landlord was not liable, for the reasons which we have stated.            *Exceptions overruled.*