CATHERINE L. NEAS *vs.* MARY E. LOWELL.

Suffolk.   November 15, 1906. — January 2, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Nuisance.   Ice and Snow.   Landlord and Tenant,* Liability of landlord to third persons.

Where a building having a steep and unguarded roof sloping toward the sidewalk of a highway is leased by its owner for a term of years, the lessor reserving the right at reasonable times to enter " to view the premises, and make repairs and improvements," the owner is not liable to one who is injured by a mass of snow sliding from the roof owing to the failure of the tenant after a severe snow storm to take the usual measures to clear away the snow so far as possible or to do anything to prevent such an accident.

TORT for personal injuries caused by snow falling upon the plaintiff from a building of the defendant.   Writ dated February 9, 1897.

At the trial in the Superior Court before *Bond,* J. the plaintiff introduced evidence that the defendant owned a brick dwelling house numbered 363 on Tremont Street in the city of Boston ; that the building was three stories high, constructed with a slate-covered pitched roof of the ordinary kind, slanting toward the sidewalk, the ridge pole being parallel therewith ; that the roof had no protection or railing to keep snow from falling upon the sidewalk ; that there was on the roof a dormer window facing the street, the window being directly at the eave of the roof ; that there was a gutter running along the eave of the roof and slightly below the edge of the eave upon the front of the building ; that the plaintiff at about eleven o'clock on the morning of January 29, 1897, was walking along the sidewalk of Tremont Street in the exercise of due care in front of this building when a large quantity of snow slid from the roof of the building upon her, throwing her to the ground and completely covering her, causing the injuries sued for ; that on January 28 there was a heavy snow storm ; that the 29th was a cold day and that at the time of the accident the thermometer stood at four or five degrees below freezing ; that the weather on the 29th was blustering with considerable wind ;

that the snow had not been cleared from the roof on the 28th or on the 29th; that the entire building at the time of the accident was occupied by one Latter, who was a tenant of the defendant; that living in the house as a lodger of Latter was one Scott; that after previous storms Scott at the request of Latter had attempted to remove snow from the roof; that on the forenoon of the 29th neither Scott nor Latter nor anybody else attempted to remove snow from the roof; that the only way any snow could be removed from any portion of the roof, without the use of ladders, was by opening one of the third story windows, leaning out, and by means of a pole knocking from the lower edge of the eave any snow or ice which had accumulated there; that by this means only such snow as was on the immediate edge of the eave or within a foot back from the edge could be removed; that while thus reaching out from the third story window and attempting to remove snow with a pole the head of the person using the pole would be about three feet beneath the eave of the roof; that the eave of the roof extended along Tremont Street about twenty-five feet; and that from the eave of the roof to the ridge pole was about fifteen feet.

The defendant offered in evidence the testimony of Latter, and introduced in evidence the lease from the defendant to him which contained the provision "that the lessor, or those having said estate in the premises with her servants, at reasonable times may enter to view the premises, and make repairs and improvements." The testimony of Latter tended to prove that the lease was executed on or about June 1, 1896; and that the roof of the building was in the same condition at the time of the execution of the lease that it was at the time of the accident; that Latter already had been in occupation of the premises for a year or two before the execution of the lease, and occupied the entire premises under the lease from its execution until the expiration of the term, including the date of the accident; that it was understood between the defendant and Latter that Latter was to take care of the property to the best of his ability; that at the time of the accident Latter was absent from the premises; that previous to the snow storm of the 28th Latter had been in the habit of, either himself or by his agent Scott, opening a window on the third story and reaching out by means of a pole and striking from the

edge of the eave of the roof such snow or ice as had accumulated on the edge of the eave; that if the snow was loose he could remove in this way only such snow as overhung the eave and extended back about a foot, but if the snow was covered with a crust it would break off where the crust gave way and come down in large pieces; that there was no other way that he could get snow off of any portion of the roof; that the face of the dormer window was right on the edge of the eave; that he never had attempted to remove the snow by the use of a pole from the dormer window, but if he had done so, he probably could have removed a little more than was possible from the third story window; that he never had made any effort to clear the roof except by the use of a pole in the manner indicated; and that he did not think it practical to remove the snow by the use of a ladder. It was agreed that it would have been possible to remove the snow from the roof by using a ladder of sufficient length. It appeared from other evidence that the distance between the eave of the roof and the sidewalk on Tremont Street was about thirty feet.

At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*M. M. Lynch & A. D. Moran,* for the plaintiff.

*F. J. Stimson, L. M. Stockton & F. J. Macleod,* for the defendant.

KNOWLTON, C. J. In all its material facts this case is like *Clifford* v. *Atlantic Cotton Mills,* 146 Mass. 47. The construction of the building was in general the same, and the lease was the same. The only difference is that in the present case the method of preventing injuries from snow on the roof is shown by the evidence. The accident happened, not from the impossibility of removing the snow so far as necessary to prevent injury, but from the failure of the tenant to take the usual measures after a severe storm, or to do anything to prevent such an accident as happened. The testimony showed that, after a snow storm the tenant was in the habit of reaching out of the windows just below the eaves with a long pole, and using it to clear off the snow from the lower part of the roof. So far as appears, he was able in that way to remove all that accumulated to such a depth as to be dangerous. In the story above there was also a dormer window

in the roof, by the use of which, according to the testimony, a larger portion of the roof might have been cleared. From the fact that the tenant had never used this window for the purpose we must infer that he never had found it necessary so to use it. There was also testimony that the roof might have been cleared by the use of a ladder. All this testimony was uncontradicted. Because of the failure of the plaintiff to introduce evidence that the house was a nuisance at the time of the letting by the defendant, or that there was an existing condition of construction that the defendant intended to have used in such a way as to make it a nuisance, a verdict was rightly directed for the defendant. The case is covered by *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47. See also *Leonard* v. *Storer*, 115 Mass. 86; *Caldwell* v. *Slade*, 156 Mass. 84; *Dalay* v. *Savage*, 145 Mass. 38; *Szathmary* v. *Adams*, 166 Mass. 145; *Munroe* v. *Carlisle*, 176 Mass. 199.

*Exceptions overruled.*