ZELOTIE A. COMAN *vs.* JOHN ALLES.

Suffolk.    January 14, 1908. — February 29, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Landlord and Tenant*, Construction of lease, Liability to traveller on highway. *Nuisance.   Ice and Snow.*

Gutters and conductors for taking water from the roof of a dwelling house were *held* to have passed to a tenant as a part of the premises described in a lease to him of "the brick dwelling house known and numbered thirty-three on H. Street."

At the trial of an action against the owner of a dwelling house for personal injuries received by the plaintiff while a traveller upon a highway adjoining the house, by reason of being struck by a mass of snow and ice which fell upon him from beneath the roof gutter and from the upper portion of the conductor which ran from the gutter, there was evidence from which the jury might have found that the dwelling house was more than forty-five feet high, that the construction of the conductor with a horizontal bend just above the ground was such as to cause water to freeze therein and ice to accumulate as did that which fell on the plaintiff, and that the conductor therefore was not a "suitable" one as required by St. 1892, c. 419, § 66; but it also appeared that the defendant had let the premises and that the lease contained covenants by the lessee to keep the premises in such repair as they were at the commencement of the term or might be put in by the defendant during its continuance, and to save the defendant harmless from any claim or damage arising from neglect in not removing snow and ice from the roof of the building. *Held*, that the defendant was not liable, since the direct cause of the injury to the plaintiff was the nuisance created by the failure of the tenant to guard against the improper accumulation of ice upon the premises.

While it is true that the owner of premises upon which exists a nuisance is responsible for the continuance of the nuisance after he has let the premises to a tenant and for the consequences of such continuance, yet, if the premises can be used by the tenant in the manner intended by the owner without a nuisance arising, then the owner is not liable for injuries caused to third persons by any nuisance created by an act of omission or of commission done by the tenant without his authority after he entered into possession.

TORT for personal injuries received by the plaintiff by reason of a mass of snow and ice falling upon her from premises of the defendant while she was walking on Hancock Street in Boston,

it being alleged that the mass fell from under a roof gutter and from the, upper portion of the conductor running from the gutter, it having formed there because of a faulty construction of the conductor. Writ in the Superior Court for the county of Suffolk dated February 19, 1904.

There was a trial before *Richardson,* J., and, it appearing, while the plaintiff's evidence was being introduced, that the defendant had let the premises in question by a lease in writing to some one other than the plaintiff, and that the lease contained the provisions stated in the opinion, the plaintiff made an offer of proof including all of the facts that he expected to show, and the presiding judge directed a verdict for the defendant and reported the case for the consideration of this court. The material facts included in the plaintiff's offer are stated in the opinion.

*G. L. Mayberry (P. A. Hendrick* with him,) for the plaintiff.

*W. I. Badger. (W. H. Hitchcock* with him,) for the defendant.

SHELDON, J. There is no doubt of the general proposition that one who does an unlawful act is liable in damages to any one who sustains personal injuries or other special and peculiar damages therefrom. *Moeckel* v. *Cross & Co.* 190 Mass. 280. *Kirby* v. *Boylston Market Association,* 14 Gray, 249, 251. It is for this reason that one who so constructs or maintains a structure upon his own premises as to cause an artificial discharge or accumulation of water upon a travelled way, so as by its freezing from natural causes to make the use of the way dangerous, may be held to answer to any one who, being rightfully upon the way and in the exercise of proper care, is injured in consequence of such dangerous condition. Of the numerous decisions which have applied the principle in this State, it is sufficient to refer to *Hynes* v. *Brewer,* 194 Mass. 435, and *Cavanagh* v. *Block,* 192 Mass. 63. For the same reason, one who so constructs the roof of his building as to create a danger that ice and snow will fall therefrom into the highway is liable for injuries caused thereby to any one injured by such a fall while travelling upon the highway. *Shipley* v. *Fifty Associates,* 101 Mass. 251. As was said by Chapman, C. J., in the case last cited, " Any act of an individual, though performed on his own soil, if it detracts from the safety of travellers, is a nuisance."

The plaintiff contends that the case at bar comes within this principle. It is provided by St. 1892, c. 419, § 66, that "all buildings over forty-five feet high shall have suitable water-tight metallic leaders, and all buildings shall have leaders sufficient to carry all the water to the street, gutter or sewer, in such a manner as not to flow upon the sidewalk, or to cause dampness on any wall, yard or area." The defendant's building was over forty-five feet high. The plaintiff, while walking on the sidewalk in front of the defendant's building, was struck and injured by a mass of snow and ice which fell from under the gutter and from the upper portion of the conductor or "leader," where it had formed because the conductor had frozen up. The plaintiff offered to show that this conductor had been constructed by the defendant in 1896, and was made of corrugated zinc in sections, with joints which could slide over each other to allow for contraction or expansion; that it descended from the gutter to a point near the ground upon the defendant's premises about five feet from the sidewalk, and then turned and ran nearly horizontally out to the line of the street, and emptied upon the sidewalk; that the effect of this construction was to cause water to freeze readily in the horizontal part of it near the ground, thus forcing the water to fill up the conductor, leak out through the joints and back up into the gutter, thereby creating large accumulations of ice upon and under the gutter and along the conductor, which were likely to fall at any time; and that this was the cause of the fall of ice and snow which struck the plaintiff. And the plaintiff offered to show that this conductor or leader was not in these respects a "suitable" one within the meaning of the statute already stated.

We assume that, if these facts were proved, the jury might have found that the defendant had failed to comply with the provisions of the statute, and that the injuries to the plaintiff were the direct and proximate result of his failure; or else that under the circumstances and in view of the proximity of his house to the highway and the liability of injury to travellers from the falling into the highway of accumulations of ice which naturally would be formed upon and about his gutter and conductor if the horizontal part of the latter were allowed to freeze up and thus obstruct the flow of water, due care required him

to guard against such freezing and against the accumulation of ice upon and around and above his conductor in such a manner and to such an extent as to be dangerous to travellers upon the street.

But it was agreed that at the time of the accident the defendant's premises were in the occupation of a tenant, under a lease given by the defendant before the accident and still in force at that time. This lease contained covenants on the part of the lessee to keep the leased premises in such repair as the same were in at the commencement of the term, or might be put in by the lessor or his representatives during its continuance, with the usual exceptions of reasonable use and wear and damage by fire or inevitable accident, and to save the lessor and his representatives harmless from any claim or damage arising from neglect in not removing snow and ice from the roof of the building or from the sidewalks bordering on the premises leased. The premises leased were described as "the brick dwelling-house known and numbered thirty-three (33) on Hancock Street in said Boston"; and it is manifest that not only the gutters, but the conductor here in question passed to the tenant as a part of the leased premises. *Durant* v. *Palmer*, 5 Dutch. 544. It was more manifestly parcel of the leased premises than the Hyatt light in *Boston* v. *Gray*, 144 Mass. 53, or the aperture over the coal cellar in *Pretty* v. *Bickmore*, L. R. 8 C. P. 401.

Under these circumstances the decisions in *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47, and *Wixon* v. *Bruce*, 187 Mass. 232, are decisive of the case at bar. The utmost that can be said of this conductor, with reference to the accident which has happened, is that it was capable of being used in such a manner as to create a nuisance. But that is not enough, as was pointed out by Holmes, J., in *Clifford* v. *Atlantic Cotton Mills*, *ubi supra*. The manifest possibility that the tenant might allow the water in the horizontal part of the pipe to freeze, and might neglect to remove the resulting accumulations of ice from the gutter and the upper part of the conductor, does not warrant the inference that this mode of using the premises by the tenant was plainly contemplated by the defendant any more than in the cases just cited. Here, as in those cases, the direct cause of

the injury to the plaintiff was the nuisance created by the acts and negligence of the tenant in failing to guard against the improper accumulations of ice upon his premises ; and the liability will stop with the tenant, whose wrongdoing was the proximate cause of the plaintiff's injury. It would be strange if the liability upon the landlord for ice or snow accumulated upon the front of his building by reason of the tenant's having failed to keep the conductors clear were greater than for a similar accumulation upon his roof, or upon the sidewalk in front of his building by reason of the tenant's failure to keep them clear and in safe condition. While it is true that the landlord does by the letting authorize the continuance of any nuisance which already exists, and is accordingly responsible for such continuance and for the consequences, yet, if the premises can be used by the tenant in the manner intended by the landlord without becoming a nuisance, then the landlord is not liable for any nuisance created by an act of omission or of commission, done by the tenant without authority after he has entered into possession. *Lufkin* v. *Zane*, 157 Mass. 117. And see besides the cases already cited, *Neas* v. *Lowell*, 193 Mass. 441 : *Frischberg* v. *Hurter*, 173 Mass. 22 ; *Glynn* v. *Central Railroad*, 175 Mass. 510, 512 ; *Quinn* v. *Crimmings*, 171 Mass. 255, 256 ; *McLean* v. *Fiske Wharf & Warehouse Co.* 158 Mass. 472 ; *Mellen* v. *Morrill*, 126 Mass. 545 ; *Leonard* v. *Storer*, 115 Mass. 86 ; *Milford* v. *Holbrook*, 9 Allen, 17, 21. We have examined the other cases cited by the plaintiff and find nothing in them to alter the conclusion which we have reached.

We have not found it necessary to consider whether the testimony that the defendant after this accident repaired the conductor and placed new guards upon the roof was competent to show that he assumed the obligation to make these repairs under the rule of *Readman* v. *Conway*, 126 Mass. 374, and *Perkins* v. *Rice*, 187 Mass. 28, 30. There was here a written lease ; there was no doubt, as we have said, that the roof and the conductor had passed to the tenant under the demise ; there was no question as to the contractual obligation to repair, or the actual occupation and control of the premises ; and the language of Braley, J., in *Kearines* v. *Cullen*, 183 Mass. 298, 301, seems to be applicable. The proximate cause of this accident was the

manner in which the tenant used the premises, rather than any lack of repair or unfit condition of the premises themselves.

According to the terms of the report, there must be

*Judgment on the verdict.*