MARY J. BEAMAN *et al. v.* W. J. GROOMS.

(*Knoxville.*   September Term, 1917.)

1. **NEGLIGENCE.   Liability.   Dangerous places.   Bathing re-sorts.**

The propietor of a public bathing resort may be found to be negligent in failing to place or properly maintain signs as to the dangerous depths of the water, or marks to indicate danger to his patrons. (*Post, p.* 325.)

Case cited and approved: Larkin v. Saltair Beach Co., 30 Utah, 86; McKinney v. Adams, 68 Fla., 208.

2. **LANDLORD AND TENANT.   Liability to third persons.   Danpurely private purposes.** (*Post, pp.* 325-326.)

The lessor of a pond for public bathing purposes must exercise a greater amount of care than if the premises had been let for purely private purposes. (*Post, p.* 325-326.)

Cases cited and approved: Willcox v. Hines, 100 Tenn., 538; Edwards v. N. Y., etc., R. Co., 98 N. Y., 245.

3. **LANDLORD AND TENANT.   Liability to third persons.   Dangerous places.**

Where an owner of a pond leases it to a tenant to use as a public bathing resort, and it had not been equipped by the landlord as such, and it was not turned over as a bathing resort, the lessor has a right to assume that the lessee would make the place suitable for his proposed use. (*Post, p.* 326.)

4. **LANDLORD AND TENANT.   Liability to third persons.   Dangerous places.**

Where an owner of a pond leased it to a tenant proposing to use it for public bathing purposes, and obtained an agreement from the lessee to make such improvements as would render the place safe for such use, the duty of active diligence to make the place safe was that of the lessee, and not of the lessor. (*Post, pp.* 326-328.)

Beaman v. Grooms.

Cases cited and approved: Hull v. Sherrod, 97 Ill. App., 298; Grogan v. Broadway Foundry Co., 87 Mo., 321; Sargent v. Stark, 12 N. H., 332; Moret v. George A. Fuller Co., 195 Mass., 118; Cerchione v. Hunnewell, 215 Mass., 588; Glass v. Colman, 14 Wash., 635.

5. **LANDLORD AND TENANT.**   Liability to third persons. Dangerous places.

In order to charge a landlord, the condition of the premises that causes the injury must be such as necessarily results from the ordinary, and therefore to be deemed contemplated, use of the premises by the tenant; and where the injury done is the consequence of negligent use by the tenant, when at his volition the use might have been without harm, he exercising ordinary care, the tenant alone is liable. (*Post, pp.* 328-329.)

Case cited and approved: Eyre v. Jordon, 111 Mo. 424.

Cases cited and distinguished: Clifford v. Atlantic Cotton Mills, 146 Mass., 47; Mellen v. Morrill, 126 Mass., 545.

6. **LANDLORD AND TENANT.**   Liability to third persons. Dangerous places.

For most purposes, and practically speaking, the same rules as to liability of landlord and tenant apply to cases of nuisance and cases of negligent use made of the leased premises. (*Post, pp.* 329-331.)

Case cited and distinguished: Rich v. Basterfield, 4 C. B., 783.

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— VON A HUFFAKER, Judge.

138 Tenn.—21

GREEN, WEBB & TATE and H. C. SANFORD, for appellants.

A. C. GRIMM and STEINMETZ & MITCHELL, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is suit for the alleged wrongful death of Raymond Grooms, a young man twenty-one years of age, who was drowned in a body of water known as Beaman's Lake. The owners and lessors of the premises on which the lake was (the Beamans) and the lessee thereof (Brown) were made defendants.

The gravamen of the action is negligence of defendants in the maintenance of the lake or pond while it was held out to and used by the public as a resort for bathing purposes. It is alleged, and the facts appear to be, that the lake was of uneven depths. Several feet from the bank there was a depth of twelve feet of water, and at places along the edge of this depth there was a sharp decline in the bottom which made it dangerous for one unaccustomed to swimming to venture that far out.

The lake was located on a farm of one hundred seventeen acres near the city of Knoxville, but it covered an area of only three or four acres. It was first leased for one year, under a verbal contract, by the owners to Brown in May, 1914. That year the lessee's father operated a bathing establishment on

a small scale, but with enough success to encourage
the lessee to attempt a development in the erection
of bathhouses and an operation on a larger scale on
his own account in the season of 1915, if a renewal
of his lease of the farm could be secured.

The owners were aware of the use made of the
lake in 1914 and of the lessee's plan, and having orig-
inally let the premises for use as a poultry farm
they objected to it, and declined to renew for the
year beginning May, 1915, until Brown agreed to
plant posts in the water and suspend thereon guard
ropes to show where the deeper water set in, also to
maintain guards, boats, and take all precautions neces-
sary to a conduct of the business safe for the patrons.
Brown agreed to this; and he did in fact go far towards
compliance before he began business in the season of
1915. A charge was made for the use of bathing
suits and the privilege of bathing in the lake.

On the day of the drowning of deceased, Sunday
August 1, 1915, twenty posts had been driven at a
distance from each other of twenty to thirty feet, and
a rope was stretched thereon. Three guards were
in service, and a rowboat was on the water. A crowd
of two hundred fifty to three hundred persons were
in bathing, among them young Grooms and a young
lady. A number of University boys had been or were
at the time in the water bent on "a good time." These
young men in some way detached the rope from a
part of the posts, and in a few moments thereafter
Grooms, who seems to have been teaching the young

woman to swim, though he could not swim himself, ventured out towards the lines and got beyond into the deeper water, where the two went down. The young woman was rescued, but Grooms sank twelve feet to the bottom and was beyond resuscitation when his body was found and taken to shore. The rope had been intact prior to this, except that it sagged at places below the surface of the water; and the posts were standing, except that two or three at some previous time had been broken off below the water after their original placement—whether at the place Grooms passed the lines is not shown. It was customary for permission to be given to experienced swimmers to go beyond the lines; others thought not to be were warned on this occasion by calls made by guards, but it does not appear that Grooms or his companion heard these warnings.

The farm was leased for the same rental sum in 1914 and 1915—$150 per annum.

The jury rendered a verdict in favor of the deceased's personal representative, after a motion for peremptory instructions in favor of defendants had been overruled by the trial judge. The court of civil appeals affirmed a judgment rendered on the verdict.

Brown, the lessee and proprietor of the resort, has not petitioned for a review, but the lessors have filed a petition for *certiorari* which has been granted; and the cause has been argued at the bar of this court.

The assignments of error are sufficiently indicated by what is said in the discussion which follows.

The proprietor of a public bathing resort may be found to be negligent in failing to place or properly maintain signs as to the dangerous depths of the water, or marks to indicate danger to his patrons. *Larkin* v. *Saltair Beach Co.,* 30 Utah 86, 83 Pac., 686, 3 L. R. A. (N. S.), 982, 116 Am. St. Rep., 818, 8 Ann. Cas., 977; *McKinney* v. *Adams,* 68 Fla., 208, 66 South., 988, L. R. A., 1915D, 442, Ann. Cas., 1917B, 326, and notes.

While the question in this case is as to the liability of one who leased the pond to such a proprietor the measure of duty upon the lessee must play a part in its solution.

How far does the fact that the pond was in use as a public resort affect the question of liability?

While, so far as the basic question of the imposition of the duty on a landlord to know the condition of the premises he leases is concerned, no distinction can be made between private and public buildings or premises (*Willcox* v. *Hines,* 100 Tenn., 538, 557, 46 S. W., 297, 41 L. R. A., 278, 66 Am. St. Rep., 770; *Edwards* v. *N. Y., etc., R. Co.,* 98 N. Y., 245, 50 Am. Rep., 659), it seems to be fair and reasonable to hold that due care on his part calls for greater exertion in the case of premises intended for use by the public than when they are let for purely private purposes (Notes 92 Am. St. Rep., 515, and L R. A., 1916F, 1123).

In our opinion the court of civil appeals erred in not holding with the lessors on one of two grounds of defense, either of which is decisive of the case.

(a)   In our opinion the duty and liability of the landlords must be tested by the condition of the premises, as dangerous or not, at the time the lease was renewed in May, 1915.   When the former term expired at that time, they in legal contemplation re-entered; and if they again demised with a dangerous situation existing on the premises they would be liable, nothing else appearing.

When the lease was renewed the pond was not fit, and it was not held out by the lessors as fit, for use as a public bathing resort. It had not been equipped or used by the landlords, and it was not turned over to the lessee as a bathing resort. The place stood to be equipped with device for the safe-guarding of patrons of the lessee, and the lessors had a right to assume that the lessee would comply with his duty and his agreement and make the place suitable and safe for his purposed use.

The case, in this aspect, falls into a class of decisions which involves a landlord's liability when premises or structures are leased which the tenant is to adapt to his future use by making alterations or changes in the same. Seemingly, however, the cases have never been grouped into such a distinct class relating to the landlord's liability.

Where a landlord is under no obligation to make or control the making of changes or improvements,

but his tenant is, his liability to third persons, in respect to conditions on the premises, subsequent to the alteration is suspended. He is not liable for injuries incident to conditions developed by reason of the insufficiency of the changes or improvements made or maintained or failed to be maintained by the tenant. *Hull* v. *Sherrod*, 97 Ill. App., 298; *Grogan* v. *Broadway Foundry Co.*, 87 Mo., 321; *Sargent* v. *Stark,* 12 N. H., 332; *Moret* v. *George A. Fuller Co.*, 195 Mass., 118, 80 N. E., 789; *Cerchione* v. *Hunnewell,* 215 Mass., 588, 102 N. E., 908, 50 L. R. A. (N. S.), 300; *Glass* v. *Colman,* 14 Wash., 635, 45 Pac., 310.

The construction of additional appliances or equipment such as warning signs or guard ropes, required to make the premises suitable and safe for use, being that of the tenant, and any negligence that resulted in their nonmaintenance being also his, the pending case is to be differentiated from those of another class where the manner of construction by the lessor and the tenant's negligence both contribute to the injury of a third person.

Therefore, when before consenting to Brown's holding over for a second year the owners demanded and obtained an agreement from him to make such improvements as would render the body of water fit and safe for use as a public bathing place, they did not, as the court of civil appeals held, still have imposed on them the duty of "active diligence to make the lake a reasonably safe place for bathing purposes." That duty was the lessee's.

(b) As to the second ground of defense:

Premising that the lease contract was entered into in good faith, and not for too short a period, a fair test of liability is: Did the lessors permit the place to pass from their possession deficient in some particular essential to its future safety when used in ordinary course for the purposes understood when it was leased?

In order to charge a landlord, the condition of the premises that causes the injury must be such as necessarily results from the ordinary, and therefore to be deemed contemplated, use of the premises by the tenant; and where the injury done is the consequence of negligent use by the tenant, when at his volition the use might have been without harm, he exercising ordinary care, the tenant alone is liable. The landlord is not liable for such negligence of the tenant whether it consists of acts of omission or commission.

The general tendency is to look no further back than to the last wrongdoer, especially when he has full and intelligent control of the consequences of the earlier wrongful or negligent act.

Thus in *Clifford* v. *Atlantic Cotton Mills,* 146 Mass., 47, 15 N. E., 84, 4 Am. St. Rep., 279, HOLMES, J., after so holding, for the court said:

"In the case of landlords who have given up to the tenant control of the premises in the matter out of which the damage arises, this court has never gone further than to hold them liable when the use from which

the damage or nuisance necesarily ensues was plainly contemplated by the lease.    .    .    .

"The landlord will not be liable for the use of the premises in such a way as to do harm, merely because there was a manifest possibility of their being used in such a way. The liability will stop with the tenant whose intervening wrong is the immediate cause of the damage."

In *Mellen* v. *Morrill*, 126 Mass., 545, 30 Am. Rep., 695, it appeared that a walk was constructed by the owner, prior to the demise, on top of an embankment. A visitor to the tenant at night fell down the embankment, and sued the landlord. The court said of the walk:

"It was rendered dangerous, if at all, by the want of a railing, or by the absence of a light or some other warning.    .    .    .

"The fact that the walk was in the same condition before the demise is not material. The defendant did not guarantee that the premises should be safe for all the uses to which the tenant might put them. The tenant alone had the right to determine the purposes for which he would use the premises. If he used them so as impliedly to invite people to visit them in the night, it was his duty to make them safe by a railing, or by a light or other warning."

See, also, *Eyre* v. *Jordon*, 111 Mo., 424, 19 S. W., 1095, 33 Am. St. Rep., 543.

For most purposes, and practically speaking, the same rules as to liability of landlord and tenant apply to cases of nuisance and cases of negligent use made

of the leased premises. 2 Underhill, Landlord and Tenant, section 480.

This court, dealing with an attempt to fix liability on a lessor of property used after lease as a railway roundhouse in such a way as to become a nuisance, used this language:

"In *Rich* v. *Basterfield*, 4 C. B., 783, the previous cases involving this question were reviewed, and the sound conclusion was announced that, if the landlord lets premises, not in themselves a nuisance, but which may or may not be used by the tenant so as to become a nuisance, and it is entirely at his option to so use them or not, and the landlord receives the same rent, whether they be so used or not, the landlord cannot be made responsible for the act of his tenant. . . .

"If the roundhouse was a nuisance at the date of the lease, then the landlord, by his contract of leasing, could not have avoided liability. But inasmuch as it was not then a nuisance, and only became one upon its use by the tenant, we think the liability of the landlord would depend upon the fact, to be passed upon by the jury under proper instructions, whether the nuisance complained of arose necessarily from its ordinary use, or from its improper use by the tenants."

The owners of the premises involved in the pending case were entitled to contemplate that improvements, appliances, and employees needed to conduct the business of the resort would be provided by the lessee, and then used in an ordinarily careful manner. If it be conceded that there was a failure in any of those respects,

Beaman v. Grooms.

the owners are not to be regarded as the creators of the situation or authors of the wrong that resulted.

The court of civil appeals erred in not sustaining the motion for peremptory instructions. Reversed, with direction to that end in this court.