MARY DONAHUE *vs.* M. O'KEEFE, INCORPORATED.

SAME *vs.* JOHN A. MCDONNELL.

SAME *vs.* JAMES J. LYNCH & another, executors.

Suffolk.    January 27, 1926. — February 25, 1926.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Snow and Ice.   Nuisance.   Landlord and Tenant,* Liability for injury due
to ice caused to accumulate on adjoining way.

The owner of a three story building in a city occupied the second floor and
let the first and third floors.    The first floor was a store and was let by a
lease in writing under which the lessee agreed "to do all inside repairs,
to keep the sidewalks in front of said premises free from snow and ice."
The lessee sublet the premises to a corporation which occupied as a
tenant at will.    A broken water spout discharged water on the adjoining
sidewalk, which froze, forming ice which constituted a nuisance.    A
traveller upon the sidewalk fell upon the ice and brought an action of
tort against the owner of the premises for injuries so received.    A ver-
dict for the defendant was ordered.    *Held,* that the owner, still being
in control of the spout, was not relieved of liability by the agreement
in the lease, and that the verdict should not have been ordered.
With the action above described there was tried an action against the
corporation, tenant at will under the lessee, and there was evidence
that the subletting was oral and that the corporation's representative,
after he had read the lease, agreed "to take it clean off" the lessee's
"hands altogether" and to "keep the sidewalk clear."    The jury
found for the plaintiff.    *Held,* that the defendant, being in control of
the sidewalk and having assumed the duty of caring for it and removing
the snow and ice, was liable to the plaintiff as one of the travelling
public for the results of its neglect.
At the trial of the action against the corporation, tenant at will, there was
evidence that the agreement with the lessee above described was made
orally by a "superintendent" of the corporation; that no letter was
written; that the corporation had occupied the premises for several
years before the accident, paying rent to the lessee, who paid rent to
the owner; that the lessee had ceased to clean the sidewalk.    An officer
of the corporation testified that the one who made the agreement with
the lessee was an "outside superintendent" with authority only to
investigate and report to other officers, and that he had no authority
"to close any deals" or to make an agreement with the lessee.    The
defendant asked for a ruling that there was no evidence that the agree-
ment with the lessee as to the sidewalk was made with authority from
the corporation.    The request was refused.    *Held,* that the jury were

warranted in finding that the defendant's representative was held out by it as having authority to hire the store and to hire it under the conditions testified to by the lessee.

THREE ACTIONS OF TORT for personal injuries sustained when the plaintiff fell on ice accumulated upon a sidewalk adjacent to premises belonging to the testator of the defendants in the third action, which he had let by a lease in writing to the defendant in the second action and his wife, and which at the time of the plaintiff's injury were being occupied by the defendant in the first action as a tenant at will of the defendant in the second action. Writs in the first and second actions dated February 3, 1923, and in the third action dated August 17, 1923.

In the Superior Court, the actions were tried together before *Greenhalge, J.*

The evidence relating to the authority of one Michael O'Hare to act for the defendant M. O'Keefe, Incorporated, in making an agreement with the defendant John A. McDonnell, described in the opinion, was in substance as follows: One Martin Curry testified that he was treasurer of M. O'Keefe, Incorporated; that in October, 1920, O'Hare was in the corporation's employ; "that he was one of their outside superintendents; that his duty was to keep in touch with the retail stores the company operated; to see that they were properly taken care of; that he had instructions regarding prices and conditions in the store, etc., to see that they were carried out, looked up locations for new stores or call in regard to any calls that they might have made in regard to new stores; that he did not at any time hire new stores; . . . that, if he found what appeared to be a favorable location, his duty was to look at the location and size it up, whether it would be suitable location or not, and then make a report to the office giving all the data pertaining to the store in his opinion as to whether or not it was a proper or good location; . . . that he had no authority to close any deals." The witness also produced what he testified was a copy of a letter to McDonnell signed in the corporation's name, and dated October 13, 1920, confirming the subletting. This copy did not mention any assumption of the covenants, described in

the opinion, which were in the lease from Lynch to McDonnell. McDonnell testified in substance "that he orally sublet the store in 1920 to M. O'Keefe, Incorporated"; "that he had a talk with Michael O'Hare, superintendent for M. O'Keefe, Incorporated; that he did not talk with any one else in reference to the hiring of this store by the O'Keefe Company other than Michael O'Hare; that O'Hare came to his store and that he, McDonnell, had two conversations with O'Hare." The substance of the conversations thus referred to is described in the opinion. McDonnell further testified that "M. O'Keefe, Incorporated, went into possession in October, 1920, and paid him, McDonnell, $50 a month rent; that he, McDonnell, in turn paid $60 to Lynch; that he, McDonnell, never gave the lease to O'Keefe, Incorporated; that O'Hare never took the lease with him; that he, McDonnell, never cleared the sidewalk from snow and ice or paid the water rates after O'Keefe Company went into possession. McDonnell further testified that he never saw nor received the letter dated October 13, 1920," as to a copy of which the witness Curry testified.

Other material evidence is described in the opinion. In the first action there was a verdict for the plaintiff in the sum of $3,000. In the second action the jury found for the defendant. In the third action by order of the judge the jury found for the defendant. The defendant M. O'Keefe, Incorporated, and the plaintiff alleged exceptions.

*J. M. Graham,* for the plaintiff.

*J. J. Mansfield, (J. F. Creed* with him,) for the defendants Lynch and another, executors.

*W. H. McDonnell, (J. P. White* with him,) for the defendant McDonnell.

*J. J. Mulcahy,* for the defendant M. O'Keefe, Incorporated.

CARROLL, J. The plaintiff was injured on East Ninth Street, South Boston, January 17, 1923. The injuries were caused by falling on an alleged artificial accumulation of ice upon the sidewalk, resulting from a waterspout emptying water from the roof of the building upon the sidewalk.

The three actions were tried together. William Lynch, the owner of the premises, has since died, and the executors of his

will are the defendants in one of the actions. In that case a verdict for the defendants was ordered. Lynch let the store on the first floor of the premises to John A. and Mary J. McDonnell, by a written lease for the term of five years from June 1, 1918, the lessees agreeing "to do all inside repairs, to keep the sidewalks in front of said premises free from snow and ice." In the action against McDonnell the jury found for the defendant. In November, 1920, John A. McDonnell orally sublet the store to the defendant M. O'Keefe, Incorporated, as a tenant at will. McDonnell testified that he told the superintendent of the O'Keefe company that it "could have the store . . . if Mr. Lynch would accept them as a tenant"; that the superintendent after he had read the lease from Lynch to McDonnell accepted its terms and agreed to "take it clean off my hands altogether"; that he told the superintendent he would have to do everything that was in that lease; that he had "to pay the water rates and keep the sidewalk clean"; that Lynch agreed to accept the O'Keefe company as tenant. M. O'Keefe, Incorporated, took possession of the store and was in occupation of it when the plaintiff was injured. In the action against M. O'Keefe, Incorporated, the jury found for the plaintiff in the sum of $3,000.

In the action against the executors of the will of William Lynch, and in the action against McDonnell, the plaintiff excepted. In the action against M. O'Keefe, Incorporated, the defendant excepted.

We will first consider the exceptions in the case against the executors of William Lynch. It appeared that the building in question was three stories in height. Lynch was the owner and occupied the second floor. The tenant of the top floor was one Horgan. Lynch gave permission to McDonnell to allow the O'Keefe corporation to occupy the store, but McDonnell continued to pay the rent to Lynch, according to the lease. The water spout connected with the gutter, which drained the roof, was on the side of the building when the lease was executed. The spout extended from the side of the building and was broken off two or three feet from the sidewalk, so that the water from the spout

emptied directly onto the sidewalk adjacent to the premises on East Ninth Street.  There was evidence that there was snow and ice on the sidewalk "underneath the water spout"; "that the snow and ice had not been removed from the sidewalk; that the ice was kind of glary ice, hilly and cone-shaped, going along for about two or three feet out from near the bottom of the conductor toward the curbstones."

In the absence of an agreement on the part of the lessee of the store to keep the sidewalk free from ice and snow, Lynch would be liable.  He owned the building, the spout was a continuing nuisance, and a source of danger to travellers upon the highway.  *Maloney* v. *Hayes*, 206 Mass. 1.

The executors contend, because of the provision in the lease to the McDonnells that the lessees were to keep the sidewalk free from snow and ice, that the lessor cannot be held for the plaintiff's injury.  They rely on *Cerchione* v. *Hunnewell*, 215 Mass. 588, *Wixon* v. *Bruce*, 187 Mass. 232, *Coman* v. *Alles*, 198 Mass. 99.  In the first of these cases, it was held that when there is a transfer of possession to a tenant, under a lease by which he is given the right to make alterations and even to replace the existing structures and agrees to save the lessor harmless from damages because of any nuisance, and especially from unremoved snow and ice, the landlord was not liable.  In *Wixon* v. *Bruce*, the liability of the landlord was not involved.  The only question was the liability of the tenants who had covenanted with the landlord to save him harmless from any claim for damages arising from neglect in removing snow and ice from the sidewalk. In *Coman* v. *Alles* the entire premises were held by the occupant under a lease providing that the lessor was to be saved harmless from damages caused by neglect in removing snow and ice from the sidewalk.  In the case at bar Lynch retained control of the water spout; see *Brewer* v. *Farnam*, 208 Mass. 448; he merely leased the store, and while the tenant agreed to remove the snow and ice from the sidewalk, the landlord continued to occupy a part of the premises, the roof and the conductors were in his possession and he might be held to have contemplated that the spout should continue to discharge water upon the sidewalk.  See *Follins* v. *Dill*, 221

Mass. 93; *Gilland* v. *Maynes*, 216 Mass. 581; the fact that the tenant also may be responsible for the plaintiff's injury does not excuse the landlord. A different case for the executors would be presented if the control of the entire premises had passed from the landlord to the tenant. Where a part of the premises is occupied by the landlord, he controlling the nuisance, the tenant having no right to remove the spout, and the tenant merely agrees to remove the snow and ice from the sidewalk, the landlord is not exempt from liability. Cases where the entire premises are leased and are under the control of the tenant, he agreeing to save the landlord harmless from damages from snow and ice not removed, are not applicable. The plaintiff's exceptions in the action against the executors of the will of Lynch are sustained.

In Donahue *v.* M. O'Keefe, Incorporated, there was evidence that the defendant orally agreed with the original lessee to take over the store upon the conditions contained in a written lease, and agreed to keep the sidewalk free of snow and ice. The tenant assumed the duty of caring for the sidewalk and removing the snow and ice. For its neglect it is liable. As was said in *Quinn* v. *Crimmings*, 171 Mass. 255, 256, ". . . examples of liability to the public being affected by private arrangements are not unknown." The O'Keefe corporation was a tenant of a portion of the building; its agreement was in effect to keep the sidewalk safe for travel, so far as snow and ice were concerned. This agreement gave the corporation control over the sidewalk, and brings the case within *Wixon* v. *Bruce, supra.*

The alleged agreement between the O'Keefe corporation and McDonnell was made with one O'Hare, an agent of the corporation, who it contended was merely an investigator with no authority to make the special agreement to remove the snow and ice. In all the negotiations between McDonnell and the O'Keefe corporation O'Hare represented the corporation. Notwithstanding the limitations of O'Hare's authority claimed by the O'Keefe corporation, the jury could find he was held out by it as having authority to hire the store and to hire it under the conditions testified to by McDonnell. See *McKinney* v. *Boston & Maine Railroad,* 217 Mass. 274,

276; *Johnson* v. *New York, New Haven & Hartford Railroad,* 217 Mass. 203; *Danforth* v. *Chandler,* 237 Mass. 518, 522. *Ferran* v. *Boston Elevated Railway,* 249 Mass. 212, is not in conflict. We find no error in the refusal of the presiding judge to give the requests of M. O'Keefe, Incorporated, or in the instructions given. In this case the exceptions are overruled.

The plaintiff agreed that if the exceptions were overruled in the action against M. O'Keefe, Incorporated, the exceptions in the action against McDonnell were also to be overruled.

In the action against the executors of the will of William Lynch, the exceptions are sustained. In the action against McDonnell the exceptions are overruled. In the action against M. O'Keefe, Incorporated, the exceptions are overruled.

<div align="right">

*So ordered.*