NATHAN BRINDIS & others *vs.* THE HAVERHILL MORRIS PLAN COMPANY.

Essex.    January 21, 1929. — February 26, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Negligence,* Of one owning or controlling real estate.  *Landlord and Tenant,* Construction of lease, Covenant by lessee to make repairs, Tenant's liability to tenant of adjacent premises.  *Nuisance.*

A lease in writing of a room in a building provided that the lessee would "keep the said premises in . . . repair"; would "save the said Lessor . . . harmless from all loss or damage occasioned by the use, misuse or abuse of the city water, or bursting of the pipes"; and would "keep whole and in good condition . . . the pipes, faucets, and water fixtures . . . ."  Several rooms in the building were heated by steam supplied by a heating company under direct contracts with the various tenants. Through the said room passed a pipe which supplied steam to the room above, which was occupied by another lessee.  The pipe, for many years previous to the tenancy, had been fitted with a tee hanging downward with a cast iron plug at its end.  On a day in December during the term steam and water escaped from the tee and damaged property in the room below, also occupied by the second lessee.  The plug, its threads worn smooth from long usage, was found on the floor under the tee.  The first lessee had vacated his room about a year previously, and the heat had been turned off therein, although the pipe in question had continued to be used to supply steam to the upper room.  At the trial of an action of tort by the second lessee against the first lessee for such damage, there was evidence that there always would be some water in the end of the tee; that there could not be enough corrosion to blow the plug; and that freezing of the water in the tee would be an adequate and the more likely cause of forcing out the plug.  There was no direct evidence of the freezing of any pipes. The trial judge instructed the jury as a matter of law that the defendant was in control of the pipe, and denied a motion by him that a verdict be ordered in his favor.  *Held,* that

(1) Under the covenants of the defendant in the lease, he had the control of and the duty to repair the pipe in question, and the instruction to the jury was correct;

(2) A finding was warranted that the defendant failed to keep the pipe in good repair or that he had failed to protect it from freezing, giving rise to a nuisance which caused damage to the property of the plaintiff; and the motion properly was denied.

TORT. Writ dated February 15, 1926.

Material evidence at the trial in the Superior Court before *Brown*, J., is stated in the opinion. At the close of the evidence the judge denied a motion by the defendant that a verdict be ordered in its favor. The jury found for the plaintiffs in the sum of $200, and the defendant alleged exceptions.

*J. P. Cleary*, for the defendant.

*P. H. Stacy*, for the plaintiffs.

PIERCE, J. The case is before this court, after a verdict for the plaintiffs, upon the defendant's exceptions to the refusal of the trial judge to direct a verdict in its favor and to a part of his charge.

The plaintiffs and defendant were tenants of a common landlord. The plaintiffs occupied under a lease the second and third floors and a part of the basement at number 2 Washington Street, Haverhill. The defendant occupied under a lease a part of the ground floor of the same building. The lease of the defendant contained the covenant "that it will keep the said premises in such repair as the same are in at the commencement of said term, or may be put in by the said Lessor or his representatives, during the continuance thereof; reasonable use and wear, and damage by accidental fire or other inevitable accidents only excepted; and also that it will save the said Lessor and his representatives harmless from all loss or damage occasioned by the use, misuse or abuse of the city water, or bursting of the pipes"; and "the lessee further promises that it will keep whole and in good condition, all the window and other glass on the premises, and also the pipes, faucets, and water fixtures and that it will leave the same whole and in good condition at the termination of this lease." The action is in tort for damage to certain

quantities of leather belonging to the plaintiffs and stored in
the basement of the building, which resulted from the leakage
of water from corroded and defective steam pipes on the
premises leased to the defendant.

Both leases were in force at the time of the alleged damage
and neither contained any provision for heating.   The build-
ing was heated by steam supplied by the Prescott Power
Company under oral contracts direct with the plaintiffs and
with the defendant.   When the steam entered the building
it was conveyed through various branch pipes to those per-
sons who had contracted with the Prescott Power Company
for steam heating.   The branch line which heated the de-
fendant's premises did not supply steam to any other prem-
ises, and no claim is made that this pipe or the radiators
connected with it were in any way defective.   The alleged
defective pipe came through the west wall of the premises
occupied by the defendant, then ran along about a foot from
the ceiling making a turn southerly, then continued straight
across, finally going upward through the ceiling, where it
supplied steam to the second floor of the building on the
premises occupied by the plaintiffs, and thence to the third
floor, also to premises occupied by the plaintiffs.   While
passing through the defendant's premises the pipe was re-
duced in size from two and one half to two inches.   At the
point of reduction there was a fitting with a tee hanging
downward, from which connections could be made for addi-
tional piping.   The end of this tee was fitted with a cast
iron plug, and it is undisputed that it had been so plugged
for many years prior to the tenancy of either the plaintiffs
or the defendant, and that the piping and plug had been in
use without any additional piping for many years.

On December 9, 1925, from the outside, steam was heard
escaping in the building.   On forced entrance it was found
that the cast iron plug was on the floor directly under the tee;
that the threads of the plug were worn smooth from long
usage; and that steam and water had come from the open
pipe onto the floor of the defendant's premises and seeped
through the floor onto the leather of the plaintiffs stored in
the basement.   Although the defendant's lease did not

expire until December, 1926, the premises had been vacated for about a year when the injury to the leather was sustained. Heat was turned off from the defendant's leased premises during the time of its vacancy, but the pipe in question with the plug end continued to be used to supply live steam to the premises of the plaintiffs on the floors above. There was testimony for the plaintiffs that there would always be some water in the plugged end; and there could not be enough corrosion to blow a plug; that "Freezing of the water in that piece of pipe would be more liable to push the plug out than anything else. Such freezing would be an adequate cause of throwing out the plug." There was no direct evidence of the freezing of any pipes.

The exception of the defendant to the instruction to the jury that "as matter of law . . . the control of that pipe was in the Morris Plan bank" must be overruled. The pipe, which was within the premises leased by the defendant, was at all times a source of danger to owners and occupants of the adjacent premises unless it was kept in repair and protected from freezing. If we assume, in the absence of the covenant above quoted, that the control and care of the particular pipe were in the lessor, that control and duty of care were vested in the defendant lessee by the covenant to repair, and the lessee, by reason of the covenant, became liable for the nuisance to adjacent owners to the same extent the lessor would have been liable had there been no covenant and the control of the pipe had been retained by the lessor. If the defendant lessee had been the owner of the premises it undoubtedly would have been obligated, as between it and the plaintiffs, to have so cared for the pipe and its connections and fixtures that the use of it or parts of it would not become a nuisance to the adjacent owners. "The same principle is applied when the occupancy and control are transferred for a certain time, and when there is no present nuisance, but the danger is relatively contingent and remote." *Quinn* v. *Crimmings*, 171 Mass. 255, 257. *Wixon* v. *Bruce*, 187 Mass. 232. *Cerchione* v. *Hunnewell*, 215 Mass. 588, 590. *Donahue* v. *M. O'Keefe, Inc.* 255 Mass. 35. Assuming that the defendant was in control of the

pipe and bound to keep it in repair, the evidence was ample to warrant a finding that the defendant had failed to keep the pipe and its connection in good condition or had failed to protect it from freezing. *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47, 49. The motion to direct a verdict for the defendant was denied rightly.

<div align="right">

*Exceptions overruled.*