ANASTASIA BRAZINSKOS *vs.* A. S. FAWCETT, INC.
(and a companion case [1]).

Middlesex.     April 3, 1945. — May 8, 1945.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Landlord and Tenant,* Nuisance, Snow and ice, Landlord's liability to third
person. *Nuisance. Snow and Ice.*

A lessor who, by a lease providing that the lessee should make repairs and
should hold the lessor harmless against an "unlawful, [or] offensive"
"use" of the leased premises, let an entire building in July for a term
of years with knowledge that on occasions in the winter time, unless
preventive measures were taken, a nuisance might be created on an ad-
jacent public sidewalk by water running from the roof down the wall
onto the sidewalk and there freezing and forming a patch of ice, could
not be said to have contemplated the likelihood of such a nuisance
arising in the winter following the making of the lease, and was not
liable to a traveller injured thereby.

TWO ACTIONS OF TORT.   Writs in the Superior Court
dated January 24, 1942.

The actions were tried before *Goldberg,* J.

*E. J. Counihan, Jr.,* & *W. H. McLaughlin,* for the plain-
tiffs, submitted a brief.

*R. B. Snow,* for the defendant.

SPALDING, J.   These are two actions of tort; in one the
female plaintiff (hereinafter called the plaintiff) seeks com-
pensation for injuries which she sustained by falling on
an accumulation of ice which had formed on the sidewalk
in front of the defendant's premises; the other is brought
by the plaintiff's husband to recover consequential damages.
The plaintiff's declaration contains two counts but the
second, which alleges a nuisance, is the only one that need
concern us as the plaintiff does not argue that she is en-
titled to recover under the first.   At the close of the evi-
dence the judge directed a verdict for the defendant in

[1] The companion case is by George Brazinskos against the same defendant.

each case, and the correctness of this action is the only question for decision.

The evidence most favorable to the plaintiff was as follows: About 10:30 A.M. on January 29, 1941, the plaintiff while walking on the sidewalk in front of the premises numbered 920-928 on Cambridge Street, in Cambridge, slipped and fell on some ice which had formed there. It is not disputed that the building at this location was owned by the defendant and that at the time of the accident it was entirely occupied by and was under the control of the Trimont Auto Repairing Company (hereinafter called the tenant) under a lease that ran for three years from July 1, 1940. The building is designed as a one-story garage and has a frontage of about eighty feet on Cambridge Street. The place where the plaintiff fell was a few feet to the east of the westerly corner of the building. The roof of the building is flat and there is a studded parapet along the front edge. The parapet is from fourteen to sixteen inches wide. Along each side of the roof there is a gutter four inches deep and five inches wide. On the west side the gutter is drained into the sewer by a conductor which is about forty feet back from the sidewalk. At the time of the accident there was snow on the roof of the garage and there was ice on the sidewalk, but only at the place where the plaintiff fell. Ice had formed on the wall of the building at the westerly corner and it extended across the sidewalk into the street. "It was one straight line all the way and started from the roof, down the side of the wall, and on to the sidewalk."

There was evidence that the defendant through its president had knowledge, prior to the execution of the lease referred to above, of the fact that water would come from the roof and down the westerly corner of the building and across the sidewalk and that during the winter time, on occasions, it would freeze and form a patch of ice at the place where it could have been found the plaintiff fell. The defendant also knew that in a snowstorm snow would accumulate on top of the parapet. There was testimony that snow forming on the parapet could melt and flow down

the side of the building and across the sidewalk onto the street.

The lease between the defendant and the tenant contained a provision that the "Lessee agrees that he will at all times heat, protect and care for the said garage building and . . . make all repairs necessary on the said building during the term of this lease so as to keep . . . [it] and its equipment in the same condition, reasonable use and wearing thereof excepted, as the same are now in or may be put in by said Lessor during the term of said lease." It also contained a covenant in which the lessee agreed to indemnify the lessor and hold it "harmless against any injury loss or damage to any person or property on the said premises or use made thereof which shall be unlawful, offensive or contrary to any law of the Commonwealth . . . or ordinance . . . of the city of Cambridge." The lessor was given the right during the term to enter and view the premises "at all reasonable times."

Since it does not affect the result, we assume, without deciding, that the plaintiff's notice of the time, place and cause of the injury was in compliance with G. L. (Ter. Ed.) c. 84, § 21, and pass to the merits of the case. The defendant, having parted with the control of the premises, would not be liable to the plaintiff for an injury due to the failure to keep them in a reasonably safe condition. Liability for an injury so incurred commonly depends upon control of the instrumentality that caused it. *Lowell* v. *Spaulding*, 4 Cush. 277. *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47. *Szathmary* v. *Adams*, 166 Mass. 145. *Shepard* v. *Worcester County Institution for Savings*, 304 Mass. 220, 222. *Nichols* v. *Donahoe*, 309 Mass. 241. But cases may arise where a landlord is liable notwithstanding the fact that he has relinquished control of the premises. Thus where there is a lease of premises on which exists a nuisance or such a condition as plainly will lead to the creation of a nuisance, and a surrender of control is made to the tenant without any express agreement touching the nuisance, the landlord may be found to have contemplated the continuance of this condition by the tenant and may be held liable to third persons

who are thereby injured. Maloney v. Hayes, 206 Mass. 1. See Clifford v. Atlantic Cotton Mills, 146 Mass. 47, 49; Coman v. Alles, 198 Mass. 99, 103; Cerchione v. Hunnewell, 215 Mass. 588, 589; Nichols v. Donahoe, 309 Mass. 241, 242.

But as was stated by Holmes, J., in discussing this rule in the Clifford case (page 49), "the landlord will not be liable for the use of the premises in such a way as to do harm, merely because there was a manifest possibility of their being used in such a way. The liability will stop with the tenant whose intervening wrong is the immediate cause of the damage. . . . In such cases it cannot matter whether the wrong on the part of the tenant is an act which makes the premises a nuisance, or an omission which allows them to become so. It is as much his duty to act in the latter case as it is to abstain in the former. In either, as against the public, the landlord, unless he has assumed the duty himself by covenant, has a right to rely upon the tenant's managing the premises in his occupation in such a way as to prevent their being a nuisance."

Assuming that the ice on which the plaintiff fell was formed under circumstances constituting a nuisance, can it be said that this was contemplated by the defendant? We think that it cannot. At the time the lease was made in July, 1940, there was no nuisance of the sort now complained of on the premises. Nor can it be said that the building was a nuisance in itself. Clifford v. Atlantic Cotton Mills, 146 Mass. 47, 50. The most that can be said from the evidence here is that it might become such at times by the mere working of nature alone unless the tenant took the necessary steps to prevent it. But, as was pointed out in the Clifford case, that is not enough. To the same effect is Coman v. Alles, 198 Mass. 99, 102. See Anderson v. Kopelman, 279 Mass. 140, 145–146; Little v. Lynn & Marblehead Real Estate Co. 301 Mass. 156, 161.

The conclusion that the defendant did not contemplate the likelihood of a nuisance existing on the premises is further strengthened by the provisions of the lease referred to above. Under the lease the tenant agreed to keep the premises in repair and to hold the defendant "harmless

against any injury . . . to any person . . . on the . . . . premises or use made thereof which shall be unlawful, [or] offensive." The effect, in shielding a landlord from liability, of an express agreement in a lease, putting a duty upon the tenant to relieve against a nuisance or the conditions from which a nuisance may be produced by the unrestrained operation of natural causes, is recognized in *Quinn* v. *Crimmings*, 171 Mass. 255, 256, *Coman* v. *Alles*, 198 Mass. 99, and *Cerchione* v. *Hunnewell*, 215 Mass. 588, 590. See also *Donahue* v. *M. O'Keefe, Inc.* 255 Mass. 35.

The direct cause of the plaintiff's injury was the wrongful conduct of the tenant in failing to prevent the improper accumulations of ice upon the adjacent sidewalk. This was the proximate cause beyond which the law does not look. The case at bar is controlled by *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47, *Wixon* v. *Bruce*, 187 Mass. 232, *Coman* v. *Alles*, 198 Mass. 99, and *Cerchione* v. *Hunnewell*, 215 Mass. 588, 590. The case of *Maloney* v. *Hayes*, 206 Mass. 1, cited by the plaintiff, is distinguishable. In that case it could have been found that at the time of the letting a nuisance existed on the premises, the continuation of which was contemplated by the landlord.

There was no error in the direction of the verdict for the defendant in each case. The plaintiff's husband could not recover for consequential damages if the plaintiff had no cause of action. *Thibeault* v. *Poole*, 283 Mass. 480, 486–487.

*Exceptions overruled.*