JOHN W. LUFKIN *vs.* JOSEPH ZANE.

Suffolk. March 17, 18, 1892. — September 8, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Nuisance — Landlord and Tenant.*

If a nuisance is created by a tenant or by a former owner who has let the premises to a tenant, a grantee subject to the tenancy in consequence of the purchase and the subsequent receipt of rent is not made liable to third persons for the use which the tenant continues to make of the premises, even if it constitutes a nuisance. By the letting, however, a landlord authorizes the continuance of a

nuisance already existing; but if the premises can be used by the tenant in the manner intended by the landlord, either as shown by the construction of the premises, or by the terms of the lease, or by other evidence, without becoming a nuisance, the landlord is not liable for the act or neglect of the tenant which creates the nuisance; and if the tenant creates the nuisance without authority of the landlord, and after he has entered into occupation as tenant, the landlord is not liable.

TORT, in two counts, to recover damages for injury to the plaintiff's real estate. The writ was dated February 17, 1890.

The first count was as follows: "The plaintiff owns an estate with brick buildings thereon, situated on Chardon Street, Boston. The defendant owns and controls the estate next southerly to plaintiff's estate, with the stable thereon. There is upon the defendant's estate a large cesspool without drain or outlet, into which filth and the urine of large numbers of horses is emptied; and the defendant has so negligently built, maintained, and caused such cesspool to be used that large quantities of said urine and filth have percolated through the soil and emptied into the basement of plaintiff's estate, to his great injury and damage, and especially causing him loss of rental of said building, loss of the use of a well thereon, and expenses connected therewith."

The second count was identical with the first, except that it alleged that the filth had been allowed to accumulate on the defendant's estate, and had percolated through the soil and emptied into the basement of the plaintiff's estate.

At the trial in the Superior Court, before *Hammond*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*C. W. Bartlett & C. W. Clark*, for the defendant.

*S. J. Elder & W. C. Wait*, for the plaintiff.

FIELD, C. J. So far as the injury to the plaintiff's estate was caused by keeping horses in the stalls in the basement of the stable, the exceptions recite " that the basement stalls were built and the holes bored by a tenant, Richardson, about March, 1889, without his [the defendant's] knowledge or consent." The defendant let the stable to Barnard on October 18, 1886, to hold for a term from November 1, 1887, to January 1, 1897. Barnard, with the consent of the defendant, let it to Richardson on February 1, 1888, to hold for a term of eight years and eleven

months from February 1, 1888. Barnard assigned this lease to the defendant on June 18, 1889. This lease contained covenants that the lessee should do all needful inside repairs, and should not make any unlawful, improper, or offensive use of the premises, nor any alterations or additions during the term, without the consent of the lessor, and that he should be "responsible, and will pay all damages and charges to the city government or others for any nuisance made or suffered on the premises during said term." There were no stalls in the basement when this lease was executed, and the basement had not previously been used for keeping horses.

So far as the injury to the plaintiff's estate was caused by the overflow of the two tanks under the floor in the rear of the basement, the principal facts appear to be as follows. The stalls on the first and second floors in the front of the stable were connected with a cesspool in the front of the basement, and this connected with the sewer in Chardon Street. No complaint was made by the plaintiff of this part of the premises. In the rear of the stable there were stalls on the first and second floors, and "gutters ran along behind the stalls in the rear half of the stable into iron pipes at the rear, which emptied directly into two vats or closed tanks under the floor in the rear of the basement." These tanks had no outlet, and it was necessary to bail them out and empty the contents into the cesspool in front. The tanks were about two and a half to three feet wide, and about three feet deep, and held about two barrels, possibly a little more, and as they were used, it was necessary to bail them, according to one witness once a week, according to others twice a week, and one witness testified that they were liable to fill up in a day if the gutters were cleaned out. There was evidence that the tanks were in good condition. A large part of the plaintiff's damages must have come from the overflow of these tanks, and from the basement stalls, from which the urine ran through holes in the basement floor into the earth.

The plaintiff bought his estate on January 1, 1883, and the defendant bought his of Oliver W. Peabody on January 31, 1884. The defendant's premises when he bought them were under a lease from Peabody to one Winship for the term of three years from November 1, 1881, and the lease contained a provision

that, in case of a sale of the premises by the lessor during the term, the .lessee should quit and deliver up to the lessor the entire premises, after having received notice from him to do so, within one, two, or three months from the date of said notice. The premises were subject also to another lease by Peabody to Winship, dated October 1, 1883, for the term of three years from November 1, 1884. Both these leases contained covenants on the part of the lessee to make all needful inside repairs, and not to make or suffer to be made any alteration therein without consent of the lessor. It does not appear that the last mentioned lease contained any provision that the lessor might determine it if he sold the premises. Both leases contained a provision that the lessor might enter to view the premises and make improvements, and to expel the lessee if he should fail to pay the rent and taxes, or should make or suffer any strip or waste, and they were assigned by Peabody to the defendant when he purchased the property. Winship, under these leases, remained in possession until Barnard took possession under the lease given him by the defendant. The premises had been used for a stable for many years, and the tanks, and the stalls for horses on the first and second floors, and the gutters and their connections with the tanks were in the stable when the defendant purchased it.

It thus appears that the defendant bought the premises subject to two leases to the same tenant, for terms which continued to November 1, 1887, and that he could not determine the leases so long as the lessee performed his covenants. If the lessor could have determined them at the time of the sale, this had not been done, and no right was given to the purchaser to determine them, if the lessee did not make or suffer any strip or waste.

The exceptions recite that " the judge instructed the jury fully in regard to the liability of defendant's grantor as a landowner in a manner not objected to by the defendant, and continued as follows: ' Now, what was the liability of the defendant before he made the lease to Barnard, and while he held the land subject to the Peabody leases? I instruct you, as matter of law, that when he succeeded to the rights of Peabody, he became liable and assumed the responsibilities of Peabody; that is to say, if at the time Peabody let those premises to Winship the

premises were then not fit for a stable, and both parties contemplated that they were to be used for that purpose, and Peabody himself would have been liable under the rules I have stated as to the liability of Zane after 1887, then Zane becomes liable before 1887, exactly as Peabody was.'" The defendant's counsel had previously asked a ruling that, "if the defendant was liable at all, he could not be held liable for any damage that might have been occasioned by the condition of the defendant's premises during the time the same were occupied by said Winship under the said leases from Peabody to him," which ruling was refused.

In this case the stable was not a nuisance in itself. It was the use made of it which constituted the nuisance, if there were one. The rule that any person injured by a continuing nuisance can maintain an action against the landowner who created it, or against a grantee who continues it, is subject to the provision that the grantee, if he merely suffers it to remain, must first be asked to abate it, and this implies that he must have the power to abate it. *Prentiss* v. *Wood*, 132 Mass. 486. A lessee is a grantee within the meaning of this rule. *McDonough* v. *Gilman*, 3 Allen, 264. It was said in *Rex* v. *Pedly*, 1 Ad. & El. 822, 827 : "If a nuisance be created, and a man purchase the premises with the nuisance upon them, though there be a demise for a term at the time of the purchase, so that the purchaser has no opportunity of removing the nuisance, yet by purchasing the reversion he makes himself liable for the nuisance." But this seems inconsistent with the opinion written by the Court of the Exchequer Chamber in *Gandy* v. *Jubber*, 9 B. & S. 15, and the statement has been often doubted or denied. The subject has been elaborately considered in *Ahern* v. *Steele*, 115 N. Y. 203. See also *Saltonstall* v. *Banker*, 8 Gray, 195 ; *Dalay* v. *Savage*, 145 Mass. 38 ; *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47 ; *McCarthy* v. *York County Savings Bank*, 74 Maine, 315.

We do not see how the defendant can be held liable for the use made of the premises by Winship under the leases from Peabody, as the defendant, so far as appears, had no control over Winship, or over the use made of the premises by him, unless he made or suffered strip or waste, and even if the defendant had the power to enter and expel the lessee, the defendant was

not bound to do this for the benefit of the plaintiff. We think that the true rule is suggested in *Dalay* v. *Savage*, *ubi supra;* which is, that if the nuisance is created by a tenant or by a former owner who has let the premises to a tenant, a grantee subject to the tenancy in consequence of the purchase and the subsequent receipt of rent is not made liable to third persons for the use which the tenant continues to make of the premises, even if it constitutes a nuisance. When a landlord lets premises with a nuisance upon them, the case is somewhat different. If the condition of the premises of itself is such as to constitute a nuisance, it has been held that by the letting the landlord authorizes the continuance of the nuisance. If the premises are a nuisance not in themselves, but in consequence of the use made of them by the tenant, then the question is whether this use is authorized by the landlord. If the premises can be used by the tenant in the manner intended by the landlord, either as shown by the construction of the premises, or by the terms of the lease, or by other evidence, without becoming a nuisance, the landlord is not liable for the acts or neglect of the tenant which creates the nuisance. If the tenant creates the nuisance without authority of the landlord, and after he has entered into occupation as tenant, the landlord is not liable. Applying these principles to the evidence, we are of opinion that the ruling asked for which we have quoted should have been given.

After Winship ceased to occupy the premises and the defendant let them to Barnard, the question is whether the defendant let them with a nuisance upon them, or let them to be used in such a manner as would create a nuisance. As we read the evidence, the nuisance resulted largely, if not wholly, from the negligence or the unauthorized acts of the tenant. If it was reasonably practicable to use the premises for a stable in the manner in which the landlord intended they should be used without creating a nuisance, then it cannot be said that by letting them the landlord authorized the creation or the continuance of a nuisance. On the conflicting evidence in the case as to the sufficiency of the size of the tanks to hold the urine which would drain into them from the number of horses which could properly be kept in the stable as it was constructed when it was let, it may possibly have been a question for the jury whether,

by the exercise of reasonable care, the tenant could have prevented the overflowing of the tanks; but the evidence is not sufficiently full on this point to enable us to decide this. The defendant is not liable for the result of stabling horses in the basement by the tenant without his knowledge or consent, as this was a use which, so far as appears, the tenant was not authorized by the landlord to make. On the ground that the defendant was entitled to the specific ruling which we have quoted, and that it does not appear that the presiding justice gave any instructions equivalent to it, the exceptions must be sustained. The questions concerning evidence may not arise in another trial, and we do not consider them.

*Exceptions sustained.*