## PETERSON v. BULLION-BECK & CHAMPION MINING COMPANY:

No. 1811. Decided September 28, 1907 (91 Pac. 1095).

1. LANDLORD AND TENANT — LIABILITY OF LANDLORD — ACTS OF OTHER TENANTS. A landlord, except for an existing nuisance, is liable to his tenants for his own overt acts of negligence only, and not for mere nonfeasance nor for injuries resulting from the acts of other tenants.

2. MINES AND MINERALS — LEASES — DUTY OF LANDLORD — ACTIONS —INSTRUCTIONS. Where plaintiff, defendant's lessee of a lower level of a mine, sued defendant for injuries sustained by the caving of the ground caused by workings of defendant's other tenants at a higher level, and plaintiff based his right to recover on the allegation that defendant, with intent to injure plaintiff, caved the ground on the ore bodies on which plaintiff was working, but the proof showed that the ground was caved through the willful or negligent acts of defendant's tenants of the upper level of which defendant had notice, an instruction that it was defendant's duty to take active measures to prevent such injury was erroneous.

3. LANDLORD AND TENANT — LIABILITY FOR NUISANCE. To render a landlord liable for a nuisance, the nuisance must be one necessarily arising from the tenant's ordinary use of the premises for the purpose for which they were let, unavoidable by reasonable care on the tenant's part.

APPEAL from District Court, Fifth District; Joshua Greenwood, Judge.

Action by Lars C. Peterson against the Bullion-Beck & Champion Mining Company, a corporation. From a judgment for plaintiff, defendant appeals.

REVERSED WITH DIRECTIONS.

*Farnsworth & Lund* for appellant.

*Geo. A. Udall* and *Powers & Marioneaur* for respondent.

RITCHIE, District Judge.

The plaintiff was a lessee of the defendant, and as such went into possession of a portion of the Bullion-Beck mine,

described as block 8 on the 300 level, south, and referred to for the sake of brevity as block 8-300. His term of lease began August 14, 1903, and extended over a period of six months from that date. Under various extensions he asserts that his rights under the lease were extended to and included June 14, 1904, and he continued working under it until April 30, 1904. The plaintiff claims that a portion of the mine known as block 8-200, which was situated on the 200 level immediately above the portion of the mine leased to him, could not be worked without causing the ground above to cave in upon his stope, and that the defendant, knowing the conditions, leased the upper block to one Malvy, who, with his partner, Pete Bianconi, began mining work over the plaintiff's stope in November, 1903, and caused the ground to cave in upon the plaintiff's ore and the waste to be thrown down upon him, and that such interference continued for 5 1-2 months; that a large amount of plaintiff's ore was covered up; and that, except for such interference, the plaintiff would have made a large profit in operating his lease. The defendant set up in defense that at the time of the occurrences complained of one John Malvy was in the sole and exclusive possession of the block of ground known as block 8-200, south, under a lease the terms of which bound him to work his block in a good and minerlike fashion with due regard to the safety, development, and preservation of the premises and for the rights of other lessees; and that for all of the matters complained of Malvy alone was responsible; and that all injurious acts of Malvy complained of, if any, were done and performed, if at all, without any knowledge, authority, connivance, or notice whatever, on the part of the defendant; and that the defendant was in no wise responsible therefor. It is claimed by the plaintiff that the evidence proved that the operations of Malvy were known to and in part directed by the defendant's superintendent; that the president and manager of the defendant company knew of the conditions, and told the plaintiff that the company would protect him; and that one Griffiths, another lessee, under the direction of the superintendent, threw down certain waste

upon the plaintiff and covered up his ore. The jury returned a verdict for the plaintiff for $3,000, upon which a judgment was rendered, and the defendant has appealed.

The defendant complains of the seventh instruction given by the court. It reads, in part, as follows: "You are further instructed that the defendant company, through its agents and servants in charge of its mine, had the authority and power, and it was the defendant's duty, if it knew that other lessors in its mine were mining their blocks of ground in such manner as necessarily to injure the rights of the plaintiff, Peterson, to take some active measures to prevent it." If such a duty rested upon the defendant company, it must have been grounded upon some contract right of plaintiff, Peterson, or upon some legal obligation. In his brief it is urged that: "The defendant recognized the conditions and took covenants with the right of forfeiture reserved for their breach from Malvy and from Griffiths to the effect that the said lessees would, among other things, observe a due regard for the rights and convenience of other lessees," etc. And, further, that: "The company's agents should have the right to prohibit such operations." We do not see how such a stipulation in a contract between the company and other lessees can give the plaintiff, not a party to such an agreement, any contractual right to demand that the company, for his protection, interfere with the other lessees, nor impose any duty upon the company to one in the situation of plaintiff in this case, unless some covenant or stipulation in the plaintiff's own lease with the company gave him the right to invoke the benefit of provisions in the lease to a third party. There is no such stipulation or provision in the leases between the plaintiff and the company.

The plaintiff, however, contends, apparently, that the law imposes a duty upon a lessor in a case such as this. The general rule is correctly stated in the defendant's tenth request for an instruction, which was erroneously refused. It is, in substance, as follows:

"That a landlord is not liable to one tenant for an improper use of a part of the premises by another tenant, unless the landlord knowingly lets such part for the purpose of being used in such improper manner, or authorizes or causes such improper use." (Jones on Landlord & Tenant, section 605. *Rich v. Basterfield*, 4 M. G. & S. 784, 56 E. C. L. 782; *Leonard v. Gunther*, 47 App. Div. 194, 62 N. Y. Supp. 99; *Edwards v. N. Y. & H. R. R.*, 98 N. Y. 245, 50 Am. Rep. 659.)

It is to be conceded that where premises are let to be used for a particular purpose, which would naturally or necessarily cause an annoyance to the injury of another tenant, the landlord is liable to such other; but that principle does not go to the length set forth in the instruction complained of. Between two lessees of different portions of a mine situated as were the plaintiff and Malvy in this case in relation to each other, each knows that the only use to which the ground can be put is mining.

Each knowing the exigencies of the business in which both are engaged should bear them in mind when he makes his contract of lease, and require from the mine owner, the lessor, such reasonable stipulations as will tend to protect himself. In this case even though as alleged by the plaintiff the operations of Malvy above the plaintiff's ground were found to interfere with the plaintiff's rights in his own premises, yet under the circumstances, as they appear in evidence surrounding the parties it is not shown that when the lease was made to Malvy it could have been foreseen that Malvy's operations would necessarily interfere with the plaintiff's ground. It cannot be presumed merely because one block of ground is above the other that the working of the upper would injure the lower, and the lessee of the lower should protect his own rights as far as possible in making a contract against the operations of one above him if the situation requires it rather than wholly rely upon a supposed duty of the lessor, the mine owner, to protect him at all hazards.

The court erred in giving the seventh instruction, and in refusing the defendant's tenth request, and such errors are sufficient to require a reversal.

Error is predicated upon the refusal of the court to give defendant's twelfth request. While it is the general rule

that where a lessee is interrupted, or his property injured, by another tenant of the lessor, the lessee's remedy is against the other tenant, and not against the lessor, it is subject to qualifications under some circumstances, and the request, as made, states the rule inaptly and too narrowly, and would have been misleading in this case. The request was therefore properly refused.

It is alleged that the court erred in giving the fifteenth instruction, to the effect that, if the defendant was found responsible for Malvy's acts, it is immaterial whether Malvy acted maliciously or otherwise. This instruction is not addressed to any issue in the case and should not have been given; but, if it were the only error, a reversal could not be directed upon that ground, because the error is entirely harmless.

The refusal of the court to give defendant's second request is assigned as error. In this request the court was asked to instruct "that the lease of August 14, 1903, is not shown by the evidence to have been extended by the parties, and that it conclusively appears in the evidence that such lease became null and void February 14, 1904." Unless the evidence were so clear as to admit of no controversy, to give such an instruction would clearly be an invasion of the province of the jury. The evidence is not such as to warrant the court in giving it. Whatever controversy there may have been as to the facts involved it was proper to submit to the jury, and it was therefore not error to refuse this request.

Numerous other errors are assigned; most of them taking exception to the admission of evidence. We do not deem it necessary to mention these, because the principles laid down in discussing the matters already adverted to we think will be found sufficient to dispose of all the other assignments of error.

The judgment is reversed, with directions to grant a new trial; appellant to recover costs.

McCARTY, C. J., concurs in the result.

FRICK, J. (concurring).

I concur in the reversal of the judgment, basing my concurrence, however, upon the following grounds, namely:

The plaintiff bases his right of recovery against the defendant as his landlord upon the allegation that the defendant "wrongfully and unlawfully, and with intent to injure and defraud this plaintiff, . . . caved ground upon the said ore bodies and upon the workings of said plaintiff, and therefore prevented him from mining the said property and from extracting the ore therefrom," by reason of which plaintiff alleges that he sustained damages. The action therefore was predicated upon the "wrongful and unlawful" acts of the defendant. The evidence, however, tended to show that the ground was caved through the willful or negligent acts of a co-tenant of plaintiff, and that the defendant had notice of these acts, and could have terminated the co-tenant's lease, and thus prevented him from continuing the injuries complained of by the plaintiff. The instruction set forth in the opinion written by Judge Ritchie proceeds upon the theory that it was the duty of the defendant to protect the plaintiff against all acts of a co-tenant in case the defendant, through its officers, agents, or servants, had knowledge of such acts. I do no think the law goes to this extent as between a landlord and his tenant for the negligent and willful acts of a co-tenant. Nor was the complaint framed upon this theory.

It may be conceded that, as a general rule, the landlord is liable for injuries resulting from his own negligence, but not those that result from that of his tenants. The landlord, except for an existing nuisance, is liable to his tenants for overt acts only, and not for mere nonfeasance. (*Gordon v. Peltzer*, 56 Mo. App. 599; *While v. Montgomery*, 58 Ga. 204; Taylor on L. & T. [8th Ed.], 199.) The evidence in this case does not support the allegations of the complaint, but is clearly to the effect that the acts complained of were caused by the negligent or willful acts of the co-tenant of plaintiff. The instruction referred to above therefore was not proper under either the allegations of the complaint or the evidence, and hence was erroneous. Counsel for plaintiff, however, seek

to sustain the judgment upon the doctrine that the landlord is liable for a nuisance existing upon the premises which causes injury to a third person. While this doctrine is well established, the proof does not establish the fact that the working of the mine immediately above the ground leased to plaintiff constituted a nuisance *per se.* Indeed, as I have already pointed out, it appears from the evidence that the injuries of which the plaintiff complains were caused through the negligent or willful acts of plaintiff's co-tenant. The principle of law upon which the landlord is held liable in cases of nuisance is well and tersely stated in Taylor on L. & T. (8th Ed.), 195, 196, in the following language:

"But to render him (the landlord) liable the nuisance must be one that necessarily arises from the tenant's ordinary use of the premises for the purpose for which they were let, and not to be avoidable by reasonable care on the tenant's part. If it (the injury) is produced only by act of the tenant, he alone is responsible."

If, therefore, the plaintiff had alleged and proved facts showing that the condition of the upper workings of the defendant's mine leased to the co-tenant of plaintiff was such that the mere ordinary use thereof with reasonable care would necessarily have resulted in the injuries complained of by the plaintiff, then he would have brought himself within the principle he invokes, but, having failed to do this, he cannot be permitted to sustain the judgment upon that ground. Nor can the plaintiff recover in view of the allegations of the complaint, unless he establishes facts from which the jury may find some overt act or acts which constitute negligence on the part of defendant or its officers or authorized agents or servants; or that the defendant, through its officers or agents, as aforesaid, committed some act or acts, or in effect directed others to do such as were injurious to the plaintiff. In such event, however, the instructions should harmonize with the allegations of the complaint and the evidence given in support of them.