### SOUTHWESTERN GAS & ELECTRIC CO. v. THOMAS et ux.

(Circuit Court of Appeals, Fifth Circuit. February 11, 1918. Rehearing Denied March 11, 1918.)

#### No. 3057.

1. LANDLORD AND TENANT ⬅️167(2)—DEFECTS—LIABILITY.

Where a street railway company conducted an amusement park for purpose of increasing its traffic, and as part of the park constructed a pool, it is liable for the death of one drowned as a result of structural defects in the pool, even though it leased the pool to one who for a small sum operated the same.

2. DEATH ⬅️69—DEATH OF CHILD—MEASURE OF DAMAGES.

A recovery by parents for the wrongful death of their child is entirely compensatory, but the jury is permitted to take into consideration the capacity, the age, and disposition of the child, as well as the ages of the parents, and their physical and financial condition; hence, where it appeared that parents were unable to educate all of their children, but had educated the child for whose death they sought recovery, under an agreement that he should repay such advances, evidence of that transaction is admissible, though the agreement between the parents and their child was unenforceable as a contract.

3. DEATH ⬅️99(3)—MEASURE OF DAMAGES.

An award of $5,000 in favor of parents for the wrongful death of their minor son 19 years of age, who had attended normal school, had almost finished the high school grades, and had been invited to teach one of the grades, at which occupation he would have earned from $85 to $90 per month, is not excessive; it appearing that the parents, though they had a number of children, were unable to educate them all, and had educated the deceased under an agreement that he should repay the advances.

---

In Error to the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

Action by Jake Thomas and wife against the Southwestern Gas & Electric Company. There was a judgment for plaintiffs, and defendant brings error. Affirmed.

John J. King, of Texarkana, Tex. (W. L. Estes, of Texarkana, Tex., on the brief), for plaintiff in error.

Hugh Carney, H. A. O'Neal, and E. A. Allday, all of Atlanta, Tex., for defendants in error.

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

BATTS, Circuit Judge. Suit was by Jake Thomas and wife, defendants in error, against the Southwestern Gas & Electric Company, for damages for negligence resulting in the death of their son. It was alleged that defendant was operating a street railway system in Texarkana, Tex., and that, in connection therewith, it conducted a park to which the public was invited, and for entrance to which and to the various amusements therein, charges were made; that within the park was a swimming pool, an artificial body of water, constructed by defendant; that the son of plaintiffs, Henry Thomas, 19 years of age, went on defendant's line of railway to the park, and, paying the charges, entered the swimming pool; that while wading in the water the son was drowned, having plunged into water over his head on account of a step-off or sudden depression in the bottom of the pool, from three feet in depth to about seven feet; that at the place there was nothing to indicate the depression, and no ropes or buoys or safety appliances by which a person stepping off could rescue himself; that there was only one attendant in charge and no boats at hand, and no appliances for resuscitating persons. By a second count it was alleged that C. W. Greenblatt was, as servant of defendant or acting with defendant as a partner, or under a lease, engaged in the operation of the park, and charges of negligence were made against him, as well as the company. Greenblatt was made a party to the suit more than two years after the accident, and a plea of limitation by him was sustained.

[1] By the charge of the court the consideration of the jury in determining negligence was confined to such defects as they might find in the construction and maintenance of the lake; the charges with reference to the operation of the swimming pool were withdrawn from their consideration. The structural defects submitted were the sudden step-off or depression, the absence of signs and markers, and the absence of ropes and buoys, or other safety appliances. If these alleged defects were structural defects, the issues with reference to them were properly submitted.

It is quite possible that the charge of the court was more favorable to the defendant than the law requires. Instead of operating the swimming pool directly, the company made a temporary arrangement with Greenblatt by which, for a small sum, he operated the pool for its receipts. The pool, and the other amusements of the park, were op-

erated for the purpose of increasing the revenues of the street railway company from fares, rather than from the profits of the park. It is to be doubted if, by the arrangement made with Greenblatt, the company in any way relieved itself of liability for negligence in operation.

However this may be, the leaving of a step-off or depression in the pool, without indicating its presence, and without providing a way by which persons whose lives became thereby endangered might secure safety, must be regarded a structural defect, for which the owner was responsible. The company continuously invited the public to use the park, and offered the pool as a proper place in which to bathe. While an issue of fact was made with reference to the existence of the deep place in the pool, this issue was determined adversely to the defendant. No reason appears why defendant is not liable to plaintiffs for such compensatory damages as resulted from this negligence.

[2, 3] The trial court permitted testimony to be introduced to the effect that the young man who was drowned had, during his minority, made an agreement with his father to the effect that, if the father would send him to school, he would, after he became of age, repay the amount expended therefor. The evidence indicates that the father was a farmer, with a number of children, and that he was not in a position financially to educate all of them, and that, by reason of the arangement mentioned, advances were made to the deceased in excess of those to the other children. This arrangement between the father and son had no force as a contract, nor would the parties be permitted to recover the amount expended under its terms. A recovery by parents for negligent injury to the son, resulting in death, is entirely compensatory; the determination of the amount to be recovered is essentially difficult; complete accuracy is impossible. The jury is permitted to take into consideration the capacity, the age, and the disposition of the child, and the ages of the parents and their physical and financial condition, and any other fact which might be of value in throwing light upon the probable contribution of the child to his parents after he shall have reached his majority. The circumstances that these extraordinary advances had been made to the son, that he was an exceptionally capable young man, and that he had promised to repay his parents the amount expended for his education, are proper to be considered in connection with other evidence. The charge of the court is not susceptible of the construction that the jury was directed to return a verdict for the amount of these advances; they were merely authorized to consider the agreement and the advances made under it, as they were the other facts throwing light on this essentially difficult matter.

It is contended that the amount awarded, $5,000, is grossly excessive. The evidence is to the effect that the father was 52 years of age; that his wife, the mother, was 48 years of age; that the deceased son was an exceedingly capable young man; that he was helpful on the farm; that he had attended the normal school at Texarkana, and had almost finished the high school course at Atlanta; that he had been

invited to teach one of the grades; that he was physically able to work, and knew how and showed a willingness to labor; that he was a boy of good character and devoted to his mother; that as a teacher in the schools he could have earned $85 or $90 per month; that he had looked forward to a professional career, for which he was apparently well adapted. The amount awarded seems large, as compared to judgments in a number of other cases called to our attention; but it is not so entirely excessive, as to warrant us in substituting our judgment for that of the jury and the trial judge.

The judgment is affirmed.