Appeal from Third District.

## LARSON v. CALDER'S PARK CO.

No. 3292.   Decided April 11, 1919.   (180 Pac. 599.)

1. LANDLORD AND TENANT—NEGLIGENCE OF LANDLORD—IMPROPERLY
   GUARDED SHOOTING GALLERY—CONTEMPLATION AS TO USE AFTER
   LEASE.  Where defendant, a park company, maintained for sev-
   eral years an improperly guarded shooting gallery, with a path
   or passageway on the park grounds near the same, it must
   have known that its tenants would probably continue the use
   of such shooting gallery, and such must have been in the con-
   templation of the parties to the lease in view of the facts dis-
   closed.[1]   (Page 332.)

2. LANDLORD AND TENANT—LANDLORD'S LIABILITY FOR NUISANCE—
   IMPROPERLY GUARDED SHOOTING GALLERY IN PARK—LIABILITY FOR
   PERSONAL INJURIES.  Where an owner created a dangerous nui-
   sance on its land it cannot avoid liability to a person injured
   thereby by leasing to another its land with the nuisance
   thereon; especially under conditions where it may be reasonably
   expected that lessee will continue to put the premises to a use
   that will continue the nuisance.   (Page 334.)

3. LANDLORD AND TENANT—LEASING OF PROPERTY FOR PUBLIC USE—
   CONTINUANCE OF EXISTING NUISANCE—CARE REQUIRED OF LAND-
   LORD.  Where property is leased to a tenant for public use the
   care required by the landlord as to existing nuisances and their
   continuance by tenants is of a higher degree than when the
   property is left for private purposes, such being a matter of
   public policy.   (Page 334.)

4. LANDLORD AND TENANT—LEASE OF PREMISES WITH EXISTING NUI-
   SANCE—IMPROPERLY GUARDED SHOOTING GALLERY—FORESEEING
   INJURY.  Where defendant park company leased grounds with
   a shooting gallery so improperly guarded as to constitute an
   existing nuisance, although, unless used as a gallery, it was
   not a dangerous nuisance, the defendant could have foreseen
   that lessees would use the same as a shooting gallery, and
   that children and others going there in large numbers were
   apt to be injured, as was plaintiff, by glancing bullets passing
   through the cracks of a board wall.   (Page 335.)

5. LANDLORD AND TENANT—DANGEROUS NUISANCE—CONTINUATION OF
   DANGEROUS NUISANCE BY TENANT—"PROXIMATE CAUSE" OF PER-
   SONAL INJURY.  Where defendant leased premises on which there
   was a shooting gallery so improperly guarded as to constitute a

---

[1] *Peterson* v. *Mining Co.*, 33 Utah, 20, 91 Pac. 1095, 14 Ann. Cas.
1122; *Stationery Co.* v. *Rogers*, 41 Utah, 411, 125 Pac. 866.

nuisance, and plaintiff's eye was destroyed by a glancing bullet passing out through cracks of a wall at the time when the tenant was in possession, the defendant landlord's negligence was the proximate cause, that is the "efficient cause, the one that necessarily set the other causes in operation" (citing Words and Phrases, First and Second Series, Proximate Cause). (Page 336.)

6.   LANDLORD AND TENANT—PREMISES WITH DANGEROUS EXISTING NUISANCE—CONTINUANCE OF NUISANCE—LANDLORD'S LIABILITY FOR PERSONAL INJURY. In an action for the loss of an eye, caused by a stray bullet from an improperly guarded shooting gallery, against defendant landlord, who leased the premises with such nuisance existing, *held* such that motions for nonsuit and directed verdict for defendant were properly denied. (Page 336.)

7.   LANDLORD AND TENANT—PARKS—DANGEROUS NUISANCE—LIABILITY OF LANDLORD—INSTRUCTION. Where plaintiff sued for personal injuries resulting from being struck by a bullet glancing from an improperly guarded shooting gallery while on a passageway in defendant landlord's park, which gallery and park were being operated by a tenant, it was immaterial whether defendant landlord intended such passageway to be used as a path, where it was shown conclusively that it had been so used for some time, and it was proper to refuse a requested instruction as to defendant's intention.   (Page 338.)

8.   TRIAL—INSTRUCTIONS—ABSENCE OF EVIDENCE TO SUPPORT. In an action for injuries to plaintiff while upon a passageway in defendant's park, refusal to instruct upon defendant's intention as to the use of such passageway by the public was not error where such issue was not raised by the pleadings.[2]   (Page 338.)

Appeal from District Court, Third District, Salt Lake County; *J. Louis Brown*, Judge.

Action by David Larson, by Laura Richardson, his guardian ad litem, against the Calder's Park Company. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*J. H. Hurd* and *L. L. Bagley*, both of Salt Lake City, for appellant.

---

[2] *Anderson* v. *Nielson*, 43 Utah 564, 137 Pac. 152.

Appeal from Third District.

D. H. *Thomas* and W. R. *Hutchinson,* both of Salt Lake City, for respondent.

## APPELLANT'S POINTS.

The general rule is that there is no implied warranty on the part of a landlord that leased premises are in a safe condition, or that he will keep the premises repaired or in a safe condition. Jones, Landlord and Tenant, section 574.

Unless the injury or damage complained of is in law the proximate and direct result of the alleged wrongful act of the owner of premises he is not responsible to the one injured thereon while the same are in the exclusive possession and under the control of the tenant. *Anderson* v. *Baltimore & O. R. R. Co.,* 81 S. E. 579.

## RESPONDENT'S POINTS.

Where the owner of a public pleasure resort leases the whole resort, and, at the time of the demise, there exists in the resort a building to be used for a shooting gallery, which, by reason of its defective condition at the time of the demise, is dangerous when operated as a shooting gallery, and that condition was known, or by the exercise of reasonable care and diligence could and would have been known to the owner at the time of the demise, and the lessee is permitted to and does, under the lease, operate such shooting gallery in the building while in such dangerous condition, and by reason thereof a patron of the resort is injured, the owner is liable for the injury. Jones on Landlord and Tenant, section 599. 24 Cyc. 1125.

WEBER, J.

Laura Richardson, as guardian ad litem of her son, David Larson, eleven years of age, instituted this action in the district court of Salt Lake county against the defendant for the recovery of damages for the loss of the boy's right eye as a

result of defendant's alleged negligence. The case was tried before the court with a jury, and a verdict was rendered in favor of plaintiff, and from the judgment entered thereon defendant appeals.

In his complaint the respondent alleges that he is an infant eleven years of age, and that he sues by his guardian ad litem; that defendant is a Utah's corporation; that on June 2, 1916, the date of plaintiff's alleged injury, and for many years prior, appellant was the owner of a pleasure resort or park known as "Wandamere" in Salt Lake City, and that Wandamere was widely known as a suitable and safe place for the entertainment of the public and of children; that long before the alleged injury appellant erected a number of buildings at said resort for the use of itself, and its lessees, and concessioners for the purpose of there conducting attractions and amusements for gain and profit and for the entertainment of the public; that appellant had constructed one of the buildings for the purpose of being used as a shooting gallery, where patrons of the resort were permitted for pay to shoot with rifles loaded with gunpowder and leaden bullets at certain targets; that said shooting gallery was constructed by appellant many years prior to June 2, 1916, and during all the time since its construction had been used as a shooting gallery; that the targets used in the shooting gallery were constructed of iron, and that when bullets would strike against them they would glance from the targets and, unless prevented by some suitable and proper protection, would fly from the targets and from the building out to where patrons of the resort were passing by or standing near the shooting gallery, and were liable to strike and injure such patrons; that during all of the time and continuously up to and including June 2, 1916, there existed immediately east of the building in which the shooting gallery was so operated a well-defined and beaten path which had been continuously, frequently, and regularly used, and at the time of the alleged injury was used, by patrons of the park in passing by the shooting gallery building; that appellant carelessly and negligently so constructed the east wall of said building of boards and lum-

ber that large cracks, holes, and openings remained therein, through which bullets when they struck against and glanced from the targets would fly out to where patrons were passing along the said path, and that by reason thereof the shooting gallery and premises thereabouts became and were unsafe and dangerous to patrons; that all of these conditions were well known to the appellant; that on April 29, 1916, the appellant leased the resort to parties who organized a corporation known as the Jackson-Sweeten Amusement Company for the purpose of operating the resort under said lease, and that with the knowledge and consent of appellant the Jackson-Sweeten Amusement Company, entered into possession of the resort under the conditions described and operated it during the season of 1916; that the lease provided that the lessees were to have complete possession of Wandamere Park, and should have the right and privilege of operating and maintaining all of the attractions and amusements which were ordinarily and usually there maintained and operated; that at the time the lease was executed, and when the park was taken possession of by the Jackson-Sweeten Amusement Company, the building in which the shooting gallery had been operated was one of the buildings of said resort, and the shooting gallery operated as above set forth was one of the attractions and amusements operated by the lessees, and that the unsafe condition of the building continued while in the possession of the lessees as it had been for many years before the lease; that during the season of 1916 the resort was widely advertised by the Jackson-Sweeten Amusement Company, which induced the teachers of the public schools of Salt Lake City to hold their "field day" for the public schools of the city at said resort on June 2, 1916, the pupils being given free admission on said date; that respondent was one of those to whom free admission was given to the resort, and that while there on the date mentioned he passed along the path referred to, and that at that time some patron of the gallery shot at the targets and a bullet so shot from the rifle glanced from the target and passed through a hole or crack in the east wall of the gallery and struck the respondent in his right eye, and as a

result of the accident his eye was destroyed and its removal became necessary.

Appellant, in its answer, admitted the age of the respondent, the corporate existence of the appellant, its ownership of Wandamere Park, and that it executed the written lease set out in the complaint. All the other allegations of the complaint were denied in the answer.

The material allegations of the complaint were supported by substantial evidence. It was shown that the shooting gallery had been operated since 1909; that the building was old even at that time; that the east wall constructed of boards had holes, cracks, and openings therein, and that this condition had existed for some years. One of the boards taken from the wall and introduced in evidence as an exhibit is literally peppered with bullets and fragments of bullets. On the east of the shooting gallery, north and south, there was a ditch with running water next to the wall of the gallery, and also a passageway, which some of the witnesses described as a well-defined track; others speak of it as a well-beaten path; all who testified on the subject said that it was often used as a passageway, particularly on important days. By the terms of the lease it was provided that the lessees expend certain sums of money in improvements and repairs, but nothing was said about the shooting gallery. They agreed to keep all the buildings used for attractions in good repair, and at all times to employ competent assistance and help in maintaining the attractions, and, in case of any accident giving rise to an action for personal injury by reason of the operation and maintenance of the park, the lessees agreed to defend any action brought and to hold the lessor harmless. The lessees were also given the right to sell concessions and give persons the right to operate attractions at the park.

The appellant maintains that from the evidence it is plain that the building or structure used as a shooting gallery was not in any sense inherently dangerous, and that whatever danger, if any, there was to patrons, arose wholly from the negligence of the lessees and their sublessees in installing and operating an apparatus for a shooting booth, and from their

neglect to take any reasonable precaution to prevent patrons from coming in close proximity to the targets placed and used in said gallery. As to the law, counsel for appellant assert that the general rule is that there is no implied warranty on the part of a landlord that leased premises are in a safe condition, or that he will keep the premises repaired or in a safe condition; and that, in the absence of an express covenant on the part of the landlord to maintain the premises in repair, it is generally held that neither the tenant nor a guest of the tenant has any right of action against the landlord for injuries sustained by reason of defects in the premises where there was no fraud or misrepresentation on the part of the landlord leasing the premises; that the overwhelming weight of authority is to the effect that, where property at the time of the demise is not a nuisance, and an injury happens by some act of the tenant or while the tenant has the entire possession or control of the premises, the owner is not liable. The following authorities are cited by appellant and support its contention: Jones, Landlord and Tenant, section 574; *Doyle* v. *Union Pac. R. Co.*, 147 U. S. 413, 13 Sup. Ct. 333, 37 L. Ed. 223; *Hamilton* v. *Feary*, 8 Ind. App. 615, 35 N. E. 48, 52 Am. St. Rep. 485; *Moynihan* v. *Allyn*, 162 Mass. 270, 38 N. E. 497; *Harpel* v. *Fall*, 63 Minn. 520, 65 N. W. 915; *Marshall* v. *Heard*, 59 Tex. 266; *Burdick* v. *Cheadle*, 26 Ohio St. 393, 20 Am. Rep. 767; *Robbins* v. *Jones*, 15 C. B. (N. S.) 221; *Mellen* v. *Morrill*, 126 Mass. 345, 30 Am. Rep. 695; *Fellows* v. *Gilhuber*, 82 Wis. 639, 52 N. W. 307, 17 L. R. A. 577; *Miles* v. *Janvrin*, 196 Mass. 431, 82 N. E. 708, 13 L. R. A. (N. S.) 378, 124 Am. St. Rep. 575; 24 Cyc. 1092; *Peterson* v. *Mining Co.*, 33 Utah, 20, 91 Pac. 1095, 14 Ann. Cas. 1122; *Clifford* v. *Atlantic Mills*, 146 Mass. 47, 15 N. E. 84, 4 Am. St. Rep. 279; *Griffin* v. *Jackson L. & P. Co.*, 128 Mich. 653, 87 N. W. 888, 55 L. R. A. 318, 92 Am. St. Rep. 496, and note C, p. 524; *Coman* v. *Alles*, 198 Mass. 99, 83 N. E. 1097, 14 L. R. A. (N. S.) 950; *Lufkin* v. *Zane*, 157 Mass. 117, 31 N. E. 757, 17 L. R. A. 251, 34 Am. St. Rep. 262; *Gardner* v. *Rhodes*, 114 Ga. 929, 41 S. E. 63, 57 L. R. A. 749; *Kalis* v. *Shattuck*, 69 Cal. 593, 11 Pac. 346, 58 Am. Rep. 568; *Ryan* v. *Wilson*, 87 N. Y. 471, 41

Am. Rep. 384; *McCarthy* v. *York County Savings Bank,* 74 Me. 315, 43 Am. Rep. 591.

Appellant relies on the case of *Peterson* v. *Min. Co.*, 33 Utah, 20, 91 Pac. 1095, 14 Ann. Cas. 1122, and specially refers to an excerpt quoted from Taylor, Landlord and Tenant, by Mr. Justice Frick in his concurring opinion as a correct statement of the law applicable to cases like the one at bar. No doubt the law is properly reflected in the excerpt quoted from Taylor, but the quotation has no application to this case for the reason that here the shooting gallery building, at the time it was leased by the appellant was in such a condition that it constituted a quiescent nuisance. From the undisputed evidence it is manifest that by using the building which was intended for use as a shooting gallery and which was leased for that purpose, in the condition it was in when leased, the projectiles in passing from the guns would necessarily be deflected from the target through the openings in the wall of the building, and would thus probably come in contact with a person passing the building along the passageway and injure him. The injury inflicted might be trivial or it might, as in the case at bar, be quite serious. It was the unsafe condition of the building as leased, however, which would expose the passer-by to danger and not the sole act of the tenant, for the reason that, if the tenant used the building at all as a shooting gallery in the condition in which it was, the danger would certainly be constantly imminent. The principle upon which the Peterson Case rests is also illustrated and applied by this court in *Stationery Co.* v. *Rogers,* 41 Utah, 411, 125 Pac. 866. The question here is not such as was involved in the Peterson Case. Here the evidence is that for years prior to the execution of the lease by appellant the shooting gallery as operated had been a dangerous nuisance. The appellant must have known this fact. It also knew of the passageway or path, and knew that it was used by the patrons of the resort, and that every person using it was in danger from flying bullets or parts of bullets which often glanced from the targets and, when not imbedded in the walls, passed through the cracks and holes therein. For some seven

or eight years at least, as shown by the evidence, this building had been used in that condition as a shooting gallery. There was no reason to think that the lessees would use it for any other purpose. Any man of ordinary intelligence would know that the tenants would probably continue its use as a shooting gallery, and, under the circumstances disclosed by the evidence, it may be fairly said that a continuance of the manner in which it had been used was contemplated by the parties to the lease.

In 16 R. C. L. section 594, p. 1076, it is said:

"It is the well-settled rule that the landlord is properly chargeable with liability to a stranger where the cause of injury to the latter is a nuisance existing on the premises at the time of the demise. No person can create or maintain a nuisance upon his premises and escape liability for the injury occasioned by it to third persons. Nor can a lessor so create a nuisance and then escape liability for the consequences by leasing the premises to a tenant. Nor is it material that the negligence of the latter contributed to the injury; that may render the lessee also liable, but it cannot exempt· the lessor from liability. Indeed, the nuisance may be merely passive until some agency of the lessee intervenes, and the lessor will still be liable. The theory upon which the landlord is held to be liable where the premises are leased with a nuisance is that he created the nuisance, and will be presumed to have intended the continuance thereof, or that he acquired title with an existing nuisance and knowingly leased them in that condition. In either case the act of leasing with the nuisance is held to raise the presumption that he intended the nuisance to be continued. Prior to and at the time of the lease, it was the duty of the lessor to put an end to the nuisance. If he fails to do this, and leases the premises with the nuisance on them, he may be deemed, and is deemed, to authorize the continuance of the nuisance, and is therefore liable for the consequences of such continuance. Whether, therefore, the defect is one of the original construction, or arises from a failure to repair, or from the maintenance on the premises of any condition endangering the health, or safety of strangers, whatever its nature, if it continues a nuisance, the lessor will be responsible for its consequences if he leases the premises with the nuisance upon them, and thus authorizes its continuance. *  *  *"

And this author further states, in section 598:

"It is not always necessary in order that the landlord may be held liable for injuries resulting from a nuisance on the leased premises that the cause of the injury be in and of itself a nuisance

at the time of the lease. Leases are made with a view to the use of the premises leased, and if the injury to the person or property of a stranger is the result of the reasonable, ordinary, and contemplated manner of use of the premises, the lessor will be responsible therefor, although unused, and as they stood at the time of the demise, the premises were not, of themselves, a nuisance. * * *"

The weight of authority is to the effect that if an owner creates a dangerous nuisance on his land he cannot avoid liability to a person injured thereby by leasing **2** to another his land, with the nuisance thereon, especially in a case where it may be reasonably expected that the lessee will put the premises to a use that will continue the nuisance. Jones, Landlord and Tenant, section 607; Taylor, Landlord and Tenant (8th Ed.) section 175; Joyce, Law of Nuisances, section 463; 25 Cyc. 1125; *Swords* v. *Edgar,* 59 N. Y. 28, 17 Am. Rep. 296; *Grady* v. *Wolsner,* 46 Ala. 381, 7 Am. Rep. 593; *Pierce* v. *Savings Soc.,* 72 Cal. 180, 13 Pac. 478, 1 Am. St. Rep. 45; *Longley* v. *McGeoch,* 115 Md. 182, 80 Atl. 843; *Isham* v. *Broderick,* 89 Minn. 397, 95 N. W. 224; *Ingwersen* v. *Rankin,* 47 N. J. Law, 18, 54 Am. Rep. 109; *Fish* v. *Dodge,* 4 Denio (N. Y.) 311, 47 Am. Dec. 254; *Marsan* v. *French,* 61 Tex. 173, 48 Am. Rep. 272; *Clancy* v. *Byrne,* 56. N. Y. 129, 15 Am. Rep. 391; *Irvine* v. *Wood,* 51 N. Y. 224, 10 Am. Rep. 603; *Folkman* v. *Lauer,* 244 Pac. 605, 91 Atl. 218; *Tomle* v. *Hampton,* 129 Ill. 379, 21 N. E. 800; *Simms* v. *Kennedy,* 76 South. 739, L. R. A. 1918C, 297; notes to 50 L. R. A. (N. S.) 291, 292; notes to L. R. A. (N. S.) 1916F, 1123-1129.

Where property is leased to a tenant for a public use the care required by the landlord should be of a higher degree than when the property is let for private pur- **3** poses. Public policy demands such care for the protection of the public, and this is particularly applicable here in Utah, where public resorts and amusement parks are numerous and their attractions varied and alluring. In *Beaman* v. *Grooms,* 138 Tenn. 325, 197 S. W. 1091, L. R. A. 1918B, 307, the court says:

"While, so far as the basic question of the imposition of the duty on a landlord to know the condition of the premises he leases

is concerned, no distinction can be made between private and public buildings or premises (*Willcox* v. *Hines*, 100 Tenn. 538, 557, 46 S. W. 297, 41 L. R. A. 278, 66 Am. St. Rep. 770; *Edwards* v. *New York & H. R. R. Co.*, 98 N. Y. 245, 50 Am. Rep. 659), it seems to be fair and reasonable to hold that due care on his part calls for greater exertion in the case of premises intended for use by the public than when they are let for purely private purposes (notes, 92 Am. St. Rep. 515, and L. R. A. 1916F, 1123)."

In Joyce, Law of Nuisances, section 464, it is said:

"The lessors or owners of buildings or structures in which public exhibitions and entertainments are designed to be given, and for admissions to which the lessors directly or indirectly receive compensation, are subject to a different rule from that in the ordinary cases of leasing of buildings, in that while there is in the latter no implied warranty on the part of the lessor that the buildings are fit and safe for the purposes for which they are used yet in the former case the lessors or owners of such buildings or structures hold out to the public that the structures are reasonably safe for the purposes for which they are let or used, and impliedly undertake that due care has been exercised in their erection, and such lessor having created an unsafe and dangerous structure, and not having performed his duty in exercising the proper degree of care to know that it was safe, he is liable to a person injured by reason of its being unsafe or of improper and faulty construction whereby it constitutes a nuisance."

Jones, Landlord and Tenant, section 608; 2 McAdams, Landlord and Tenant, 1643; *Barrett* v. *Beach Co.*, 174 N. Y. 310, 66 N. E. 968, 61 L. R. A. 829.

We agree with appellant's counsel that as a building by itself the so-called shooting gallery was not a nuisance. As a bare building it was innocuous. When targets were placed in position and the other paraphernalia installed it was still harmless. It did not become an active and dangerous instrumentality until a gun was placed in the hands of a patron, and not until he fired the gun. Then the missiles became active agents of danger, and they were dangerous then because the walls of the building had not been protected, and because holes and cracks were permitted to be in the walls, and because bullets and fragments of lead which glanced from the targets and went through openings in the walls were likely to hit and injure innocent third parties. All of this could have been foreseen by the appellant at the

time the lease'was executed.   It will not do to say that
the place had been used as a shooting gallery for years; that
the use by appellant's tenant of the premises as a shooting
gallery was not contemplated by the parties to the lease; and
that the danger from its use as a shooting gallery could not
have been anticipated by the lessor.   Appellant knew, or
should have known, that the lessees would use the shooting
gallery as it had been used, that children would go there in
large numbers, and that they would be subjected to danger
unless the shooting gallery was repaired and the walls were
properly protected.

It is earnestly urged that the injury to the respondent was
not the proximate result of appellant's wrong, and that the
condition of the building in which the shooting gallery was
placed was not the proximate cause of the accident.   Appel-
lant quotes from *Milwaukee & St. P. R. R. Co.* v. *Kellogg,* 94
U. S. 469, 24 L. Ed. 256, cited in *Anderson* v. *Baltimore &
Ohio Ry. Co.,* 74 W. Va. 21, 81 S. E. 581, 51 L. R. A. (N. S.)
892, in which case it is said:

"The question always is:   Was there an unbroken connection
between the wrongful act and the injury, a continuous operation?
Did the facts constitute a continuous succession of events, so linked
together as to make a natural whole, or was there some new and
independent cause intervening between the wrong and the injury?"

According to the evidence in this case there was an un-
broken connection between the wrongful act and the
injury—between the nuisance and the unfortunate re-  ·  **5, 6**
sult.   The question is:   Was the dilapidated condition··
of the so-called shooting gallery the causa sine qua non?   If
the cause had not existed, would the injury have taken place?
If the wall had been properly protected, and there had been
no holes or cracks in the wall, would the fragment of lead
have struck the respondent in the eye and blinded him?   It
is true that there was a concurring cause, but the cause which
set the others in motion, the cause of causes, and without
which the accident would not have occurred, was the condi-
tion of the shooting gallery wall.   As stated in the Kellogg
Case, supra:

"The primary cause may be the proximate cause of a disaster,

though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement."

Proximate cause has been defined as "the efficient cause, the one that necessarily sets the other causes in operation." 3 Words and Phrases, 1335. It has also been defined as a cause from which a man of ordinary experience and sagacity could foresee that the result might probably ensue. In our opinion the district court took the proper view of the law applicable to the evidence, and properly overruled appellant's motion for a nonsuit, and its request for an instruction directing a verdict in its favor.

Appellant further argues that, even if it be conceded that the facts were sufficient to justify the court in submitting the case to the jury, it was error vitally affecting the defense for the court to refuse to submit to the jury the question as to whether or not the passageway, the place where the respondent was standing at the time of the injury, was laid out or intended by the appellant as or for a footpath or passageway for the use of patrons of the resort. In its brief appellant says:

"Plaintiff's counsel, by their pleadings, recognized the vital nature of this issue and expressly alleged that the space in question was laid out and intended by defendant as a footpath for the patrons of the resort, and that the plaintiff was rightfully there by implied invitation as the guest or licensee of the lessee of the premises."

Referring to the path, the following language was used in the complaint:

"That during all of the times hereinbefore mentioned, and continuously up to and including the time of the said injury to the plaintiff, there existed immediately east of the said building in which the shooting gallery was so operated a well-defined and beaten path and passageway, which during all of said times had been continuously, frequently, and regularly used, and that at the time of said injury was used by patrons of the said resort in passing by the said building in which the said shooting gallery was so operated, all of which was at all times well and fully known to the said defendant."

The vital fact is that the path was used by the public.

What it was intended for was not an issue in any way and was wholly immaterial; and the court properly refused to instruct as requested by the appellant. It may well be that the appellant never intended the space spoken of to be used as a passageway, but it certainly was used as such according to the undisputed evidence. One of the witnesses said in response to a question by appellant's counsel: "It may not have been intended for a walk, but it was used for a walk." Again the witness said: "It may not have been intended for a walk; as far as I know, it was being used all the time."

Appellant complains that the trial court not only refused to give the instruction requested, but declined to give any instruction whatever upon the subject, and cites *Anderson* v. *Nielson*, 43 Utah, 564, 137 Pac. 152, wherein it is said:

"Where there was evidence tending to support a theory of defendant, it was error for the court to refuse to submit the case on such theory.".

No such issue as now contended for by the appellant was raised by the pleadings, and had it been offered any evidence on the subject would have been immaterial. If it was the appellant's theory that its good intentions constituted a defense and that its intention with regard to the pathway was vital, the theory was not made an issue by the pleadings, was not supported by evidence and not justified by reason. Appellant's theory was wholly speculative, and even if supported by evidence would not have contradicted the undisputed testimony that the path was actually used by children on the day of the accident, and that it had frequently been used by others at many times prior to the time when respondent was injured.

The issues were fully and fairly submitted to the jury by the court's instructions, and a careful consideration of all the assignments of error discussed by appellant's counsel, and a review of all the evidence, convinces us that there is no reason for reversing the judgment of the district court.

Judgment affirmed. Costs to respondent.

CORFMAN, C. J., and FRICK, GIDEON, and THUR-