**MEDLIN v. HAVENER et al.**

No. 13431.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 16, 1936.

Rehearing Denied Dec. 4, 1936.

Elmer H. Parish and W. T. Locke, both of Wichita Falls, for appellant.

Bullington, Humphrey & King, of Wichita Falls, for appellees.

DUNKLIN, Chief Justice.

Otto Medlin instituted this suit against the owners and lessees of a swimming pool situated in Wichita county near the Jacksboro highway, outside the corporate limits of the city of Wichita Falls, to recover damages resulting from the drowning of his 12 year old son Virgil Medlin, while bathing in the pool. He has prosecuted this appeal from a judgment sustaining a general demurrer to his petition urged by the owners of the premises after plaintiff had taken a nonsuit as against the lessees.

Since the general demurrer admits as true the material allegations in plaintiff's petition, the facts therein alleged will be stated in narrative form.

In the bottom of the swimming pool a pipe was installed to permit the water to be drained therefrom. This drainage pipe extended 18 inches above the bottom of the pool and was about 8 inches in diameter, and had no covering over it to prevent the foot or leg of a bather being drawn therein by suction while the pool was being drained. The drainage pipe was hidden from view of the bathers by the water above it. After the swimming pool was leased by the owners, the lessees took possession and control of it and began its operation for hire; and, while so doing and holding out the same to the public for patronage, they gave permission to Virgil Medlin to go in swimming in the pool after he had paid the usual and customary charges therefor. At that time the pool was being drained without his knowledge, and when he dived or jumped from the bank near the open drainpipe, his right leg was sucked and held therein for some fifteen minutes and he was thereby drowned. One Ellis Wilson, the agent and servant of the lessees in charge of the pump, was notified of the perilous position of the boy by another boy when Virgil was first caught in the drainpipe but said agent negligently failed and refused to lend him assistance until he was drowned.

The owners of the swimming pool acquired it with the intention of its being used as a public swimming pool for profit to them, and had so owned it for a long time prior to the time of the execution of the lease. They had constructed the pool and knew, or were charged with knowledge, of the presence of the drainpipe and the manner of its operation.

Plaintiff's petition contains these further allegations:

"Your plaintiff alleges that R. B. Havener, Eula Havener, Lois Havener, and S. M. Brightwell were grossly negligent in the following particulars, towit:

"(1) They constructed the said swimming pool with a dangerous and defective condition therein, which amounted to a nuisance.

"(2) They allowed, permitted, and consented to the continuance of the nuisance by leasing the pool knowing it to contain an open and unguarded drain pipe.

"Plaintiff further alleges that the above named defendants knew, or should have known by the exercise of ordinary diligence at the time of their leasing the said pool, of said dangerous nuisance and that said dangerous nuisance would endanger the lives of all bathers in said pool; that the above named defendants leased the pool to the defendants Earl Stuckey, Sadie Stuckey, and Pansy Turner for the express purpose of the latter named defendants operating it as a public swimming pool for profit.

"Plaintiff alleges that the defendants Earl Stuckey, Sadie Stuckey, and Pansy Turner were grossly negligent and careless in the following particulars, towit:

"(1) In their operating the said pool with the open, unguarded, and hidden drain pipe, a dangerous nuisance, therein.

"(2) In permitting and ordering the said pool to be drained while the said Virgil Medlin and other bathers were therein.

"(3) In that one Ellis Wilson, an agent, servant, and employee of the said defendants Earl Stuckey, Sadie Stuckey, and Pansy Turner, while in the course of his employment, failed and refused to investigate and attempt to save the life of the said Virgil Medlin until some fifteen minutes after one Junior Cox had given him notice of the perilous position of the said Virgil Medlin.

"Plaintiff alleges that each and every act of negligence of the defendants, R. B. Havener, Eula Havener, Lois Havener, and S. M. Brightwell, as hereinabove detailed, concurring with each and every act of negligence of the defendants, Earl Stuckey, Mrs. Sadie Stuckey and Pansy Turner, as hereinabove detailed, or/a combination of some and/or all of them were the direct and proximate cause of the death of the said Virgil Medlin, and the consequent damages to your plaintiff, Otto Medlin, as hereinafter detailed."

There were further allegations of damages sustained by plaintiff as the result of the loss of services of his minor son, with a prayer for recovery of the same as against all the defendants, jointly and severally.

■■ It is a well-settled rule of decisions of this state that in the absence of a special contract to the contrary, and in the absence of fraud and deceit inducing the lessee to believe the landlord would make such repairs, the lessor is under no implied obligation to the lessee to keep the rented premises in a condition safe and suitable for the uses to be made of the demised premises by the lessee. And in the absence of a showing that the condition of the premises causing the injury constituted a nuisance existing at the time the lease was made, and that the lease was made with the intention of the lessor that it would be used by the lessee in that condition, then the lessor is not liable to the lessee or his servant or agent or invitee for injuries sustained as the result of the unsafe condition of the premises. It is specifically held that the servant or agent or invitee stands in the shoes of the lessee and with no higher right. See Marshall v. Heard, 59 Tex. 266; Perez v. Rabaud, 76 Tex. 191, 13 S. W. 177, 7 L.R.A. 620; O'Connor v. Andrews, 81 Tex. 28, 16 S.W. 628, 629; Paternostro v. Bradley (Tex.Civ.App.) 262 S. W. 896; Jackson v. Amador (Tex.Civ. App.) 75 S.W.(2d) 892 (writ of error dismissed).

In O'Connor v. Andrews, supra, the court quotes with approval from Sawyer v. McGillicuddy, 81 Me. 318, 17 A. 124, 3 L.R.A. 458, 10 Am.St.Rep. 260, the following: "That the obligation to repair, in the absence of any express agreement, depends upon the right of possession; and that an appurtenance attached to and made for the accommodation of several different tenements, leased to different tenants, remains in the possession of the lessor, though the use of it goes to the lessees."

The court then said: "The mere lease of the different parts of the building to different tenants, each one taking a distinct and separate part of it, in the absence of an express agreement to the contrary, only bound each one for the repair of so much of the building as he rented. The roof covered and was necessary to all of them alike, but it was not proved to be the duty of any one of them to repair it; and, as there does not appear to have been any joint contract, a duty that did not devolve upon any one of the tenants separately did not attach to all of them collectively."

That announcement was the pivotal question on which the decision turned.

However, appellant cites other portions of the opinion, to the effect that if the premises are rented with a nuisance thereon, then the lessor would be liable for injuries resulting therefrom, independently of and as an exception to the general rule stated above.

Prussak v. Hutton, 30 App.Div. 66, 51 N.Y.S. 761, cited by appellant, is distinguishable from this case by reason of the fact that the keeping of explosives in a powder house which resulted in the injury complained of was clearly a nuisance. 20 R.C.L. § 25, p. 407; 27 C.J. pp. 703, 704.

The same observation applies to the cesspool involved in Fow v. Roberts, 108 Pa. 489. And the decision of the Supreme Court of Utah in Larson v. Calder's Park Co., 54 Utah, 325, 180 P. 599, 4 A.L.R. 731, was based on the conclusion stated in the opinion that the operation of a shooting gallery on the leased premises from which a bullet glanced and destroyed the sight of an eye of plaintiff's minor son while passing was a dangerous nuisance, and that, since the lessor leased the same with the shooting gallery thereon and with the intention that it should be so used by the tenant, he was liable for the injury to the boy. Pickens v. Coal River Boom & Timber Co., 58 W.Va. 11, 50 S.E. 872, 6 Ann.Cas. 285, involved the issue of nuisance for which both the lessor and lessee were held liable.

The decision in Paternostro v. Bradley, supra, holding the landlord liable for injury of an invitee of a tenant of premises abutting on a passway, resulting from falling in an open well in the passway, was based both on the ground that the passway was in possession and control of the landlord, and also was a nuisance.

Southwestern Gas & Electric Co. v. Thomas (C.C.A.) 249 F. 325, was a suit by a parent for the drowning of a minor son in a swimming pool which the appellant owned but had leased to a tenant, and the death occurred while being operated by the lessees. There was a sudden step-off or depression in the bottom of the pool and when the boy stepped into it, the water was over his head and, being unable to swim, he was drowned. Although the lessor was under no contract to keep the pool in a safe condition for use, the court held, in substance, that a recovery against the lessor could be sustained on the ground that the sudden step-off in the bottom of the pool, existing at the time the lease was made, was structural and constituted a nuisance and the lessor could not escape liability for injuries resulting therefrom by leasing the pool to another.

We do not believe that the condition of the pool involved in the case at bar constitutes a nuisance, for which the lessor would be liable. In order to insure wholesome water for bathers, drainage of the pool from time to time was necessary. Operation of the pool without a cap over the drainage pipe to prevent injury to the bather by being sucked into the pipe did not constitute a nuisance per se. The danger of such an injury existed only during the drainage of the pool through the open pipe. Furthermore, in the absence of some showing of notice to the lessors when the lease was executed that the lessees would probably permit bathing while the pool was being drained, then for lack of foreseeableness of such action, they could not be held liable for the injury jointly with the lessees, on the theory of joint tort-feasors. 31 Tex.Jur. § 3, p. 412, § 10, p. 420, § 23, p. 435; Jackson v. Amador (Tex.Civ.App.) 75 S.W.(2d) 892.

Apparently the decision of the Federal Circuit Court of Appeals in the case of Southwestern Gas & Electric Co. v. Thomas, supra, is in conflict with the rule of decisions of our state courts, but the latter are of controlling force here and must be followed.

The **judgment of the trial court is affirmed.**